**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Kazys PALCIAUSKAS, a/k/a Kazimieras Palciauskas, Defendant-Appellant.**

No. 83–3339.

United States Court of Appeals, Eleventh Circuit.

June 18, 1984.

Ernest C. Raskauskas, Jr., for defendant-appellant.

Janet K. DeCosta, Neal M. Sher, Joseph F. Lynch, U.S. Dept. of Justice, Crim. Div., Washington, D.C., Robert W. Merkle, U.S. Atty., Gary J. Takacs, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before HILL and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal from a judgment in an action by the United States to revoke the citizenship of Kazys Palciauskas. The district court found that Palciauskas was the Mayor of Kaunas, Lithuania from June 25, 1941, to May, 1942, during the Nazi occupation of that city (then the capital of Lithuania). *United States v. Palciauskas,* 559 F.Supp. 1294, 1296 (M.D.Fla.1983). Although much of the government's case against Palciauskas at trial consisted of showing that while he was Mayor, Palciauskas cooperated with the Nazi regime in the ghettoization and persecution of the Jewish community in Kaunas, the district court concluded that it was unnecessary to the resolution of this case to make specific findings in that regard. *Id.* at 1300.

After Palciauskas resigned as Mayor in May, 1942, he was appointed by the Nazis to head a food cooperative. *Id.* at 1298. Palciauskas retreated with the Nazis when the Soviets retook Lithuania in 1944. *Id.* After the war, Palciauskas was employed in Germany by a labor supply company of the United States Army as chief accountant and mail clerk. *Id.*

In 1949, Palciauskas took the first step toward immigrating to the United States and eventually attaining U.S. citizenship by applying for status as a "displaced person." *Id.* To obtain that status, Palciauskas first had to obtain certification from the International Refugee Organization ("IRO"), a United Nations organization, that he was a refugee "of concern" to the IRO. On his IRO resettlement form, Palciauskas failed to disclose his tenure as Mayor of Kaunas. *Id.* Rather, Palciauskas maintained that he was employed as a "clerk" in various food cooperatives during and after the period he served as Mayor. *Id.* Based on the information provided by Palciauskas, the IRO certified Palciauskas as a refugee "of concern." *Id.*

Following his IRO certification, Palciauskas became eligible to apply to the United States Displaced Persons Commission ("DPC") for determination of his eligibility for a displaced person visa. *Id.* To be processed by the DPC, Palciauskas had to undergo a mandatory security investigation by the Army Counter Intelligence Corps ("CIC"). Although the CIC was particularly interested in any suspected acts of collaboration with the Nazis, Palciauskas again failed to disclose his tenure as Mayor of Kaunas during the Nazi takeover. *Id.* Because of the inaccessability of Palciauskas's records in Lithuania, the CIC was unable to, and did not, establish Palciauskas's past history or the reliability of the information he provided during the investigation.

Dr. Milton Colvin, a former DPC member, stated that had Palciauskas revealed to the CIC his position as Mayor of Kaunas during the German occupation, the CIC would have launched a much more thorough investigation of his background. *Id.* Additionally, Dr. Colvin testified that under the standard policies of the DPC, the mayor of a Nazi occupied town would have been presumed to be either an active or a passive collaborator. *Id.* Moreover, the DPC did not excuse involuntary or forced collaboration, unless the applicant used his official capacity to aid the anti-Nazi underground movement. *Id.* Palciauskas produced no evidence for the CIC that he had aided the underground.

Following the CIC investigation, which failed to turn up any negative information about Palciauskas, his file was reviewed by a DPC case analyst. Dr. Colvin stated that if the case analyst had discovered any misrepresentations at that time, the DPC would have had cause for an immediate,

summary denial of Palciauskas's petition. *Id.* at 1299. The case analyst did not, however, discover Palciauskas's previous omissions, and he approved Palciauskas's petition. *Id.* Having convinced the DPC of his eligibility, Palciauskas next applied for a visa from the Department of State, Munich Subconsulate at Amberg, Germany. Palciauskas was interviewed by a United States Vice Consul, who required Palciauskas to verify all the information in his file, including application forms and reports from the IRO, CIC, and DPC. Again, Palciauskas did not mention that he was Mayor of Kaunas. Palciauskas was granted a visa and entered the United States on April 19, 1949. On July 18, 1949, Palciauskas filed with the Immigration and Naturalization Service ("INS") a declaration of intent to apply for United States citizenship. In 1954, Palciauskas underwent the naturalization application and examination process. He never explained his earlier misrepresentations. Sometime in 1954, Palciauskas was naturalized as a United States citizen by a district court in Illinois. Palciauskas now lives in Florida, and is 77 years old.

The United States brought this action pursuant to the Immigration and Naturalization Act of 1952, as amended, 8 U.S.C. § 1451(a), seeking to cancel Palciauskas's certificate of naturalization, thereby revoking his citizenship. The government filed a six count complaint. Count one alleged that Palciauskas made a willful, material misrepresentation on documents used to apply for a visa and on his application for citizenship in that he failed to disclose his position as Mayor of Kaunas under the Nazi occupation. Counts two through six alleged that Palciauskas had illegally procured his United States citizenship in five respects related to his wartime activities. The district court found in the government's favor on all six counts. Most important here is that the district court found that Palciauskas failed to disclose his posi-

tion as Mayor, and that his failure was a material misrepresentation.

## ISSUES

Palciauskas raises a number of issues primarily related to the discovery that went on in this case. In essence, he claims he was denied a fair trial because the government obstructed his discovery efforts, because he was unable to conduct discovery in Lithuania due to the expense and the futility of using the Soviet justice system, and because the district court failed to order various discovery sanctions against the government. Palciauskas also claims that it was error for the district court to admit depositions of Soviet witnesses taken in the Soviet Union by the government without Palciauskas's counsel present. Furthermore, Palciauskas argues it was error to admit any documents from Soviet archives, apparently on the ground that such documents were inherently unreliable. Finally, Palciauskas argues that Counts two through six attempted to apply the "false procurement" principle to him retroactively in violation of the ex post facto clause of the United States Constitution.

## DISCUSSION

Although the issues raised by Palciauskas are novel, complex, and in some respects troubling, we do not reach any of them because any error that may have occurred was harmless. Even if we take Palciauskas's best case and assume that all of the Soviet derived evidence was inadmissible, that Palciauskas was indeed frustrated by the government in his discovery efforts, and that the "false procurement" principle could not be applied retroactively to Palciauskas,[1] we are still faced with the fact that in 1975 Palciauskas freely admitted to a government investigator, who recounted the admission at trial, that he was Mayor of Kaunas in 1941–42 during the Nazi occupation of that city.

---

**1.** *But see United States v. Koziy,* 728 F.2d 1314 (11th Cir.1984) (although statutory provisions for denaturalization did not include illegal procurement at time defendant obtained citizen-

ship, utilization of illegal procurement as basis for denaturalization did not violate ex post facto clause).

Under section 340(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1451(a), the procurement of United States citizenship by concealment of a material fact or by willful misrepresentation is grounds for revocation of that citizenship. Count one of the government's complaint charged Palciauskas with making a material misrepresentation under section 340(a). We agree with the district court that Palciauskas's deliberate omission throughout the immigration and naturalization process of the fact that he was mayor of a Nazi-occupied town was a material misrepresentation. The evidence at trial showed unequivocally that had Palciauskas made full disclosure of his position as Mayor, he would not have been allowed to enter the United States unless he could pass a much more rigorous inquiry into his background.

Nevertheless, Palciauskas argues that if he had not been frustrated in his discovery attempts, he would have been able to show that the position of Mayor of Kaunas under Nazi rule "was an impotent position of no discretion or power." In other words, Palciauskas claims that he was a powerless figurehead. That may have been true. Nevertheless, the fact remains that Palciauskas's service as Mayor was material to the various agencies that investigated him before he entered the United States. Testimony at trial showed that a more thorough check would have been made of Palciauskas had he revealed his mayoral position. Of course, had Palciauskas convinced the United States authorities in 1949 that his mayorship was impotent, or that he had actually used his position to sabotage the Nazi war effort, he may still have been allowed into the United States. But those facts were for government authorities to determine to their satisfaction based on complete and truthful information in 1949, not for Palciauskas to decide for himself then, or for us to decide now.

Accordingly, we hold that Palciauskas procured his United States citizenship by concealment of a material fact or by willful misrepresentation, which is a ground for revocation of citizenship pursuant to section 340(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1451(a). The judgment is AFFIRMED.