Kazys **PALCIAUSKAS** a/k/a
Kazimieral Palciauskas,
Petitioner,

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 90–3471.

United States Court of Appeals,
Eleventh Circuit.

Aug. 26, 1991.

Guillermo A. Ruiz, Arturo M. Rios–Marques, St. Petersburg, Fla., for petitioner.

Ronnie L. Edelman, Denise Noonan Slavin, Office of Special Investigations, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before HATCHETT and ANDERSON, Circuit Judges, and LIVELY *, Senior Circuit Judge.

ANDERSON, Circuit Judge:

The petitioner, Kazys Palciauskas, contests a deportation order issued by the United States Immigration Court and affirmed by the Board of Immigration Appeals.

## I. FACTS AND PROCEDURAL HISTORY

 The litigation against petitioner began in 1981, when the government filed a denaturalization action against petitioner under 8 U.S.C. § 1451(a).[1] After extensive litigation, the district court denaturalized petitioner, finding that petitioner had procured his citizenship illegally by concealment of a material fact and willful misrepresentation. *United States v. Palciauskas*, 559 F.Supp. 1294 (M.D.Fla.1983), *aff'd*, 734 F.2d 625 (11th Cir.1984). At several steps in the complex process culminating in petitioner's entry into the United States in 1949 and his subsequent naturalization as a United States citizen in 1954, petitioner concealed the fact that he had been the Mayor of Kaunas, Lithuania, from June 25, 1941 to May, 1942, instead asserting that he had been an "office clerk." Kaunas is a town in Lithuania that was controlled, occupied and temporarily established as the Lithuanian capital by the forces of Nazi Germany during a period which included petitioner's tenure as Mayor.

Although much of the government's denaturalization case against petitioner consisted of showing petitioner's role in the "ghettoization" and persecution of Jews while he was Mayor of Kaunas, and the district court detailed much of this evidence in its opinion, the district court stated that "[a]s it appears unnecessary to resolution of this proceeding, the Court makes no

---

\* Honorable Pierce Lively, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. Section 1451(a) provides:

 It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any District Court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate

of naturalization shall be effective as of the original date of the order and certificate, respectively: *Provided,* That refusal on the part of a naturalized citizen within a period of ten years following his naturalization to testify as a witness in any proceeding before a congressional committee concerning his subversive activities, in a case where such person has been convicted of contempt for such refusal, shall be held to constitute a ground for revocation of such person's naturalization under this subsection as having been procured by concealment of a material fact or by willful misrepresentation. If the naturalized citizen does not reside in any judicial district in the United States at the time of bringing such suit, the proceedings may be instituted in the United States District Court for the District of Columbia or in the United States district court in the judicial district in which such person last had his residence.

specific findings relative to possible active participation by [Petitioner] in acts of persecution of Jews." *Id.*, 559 F.Supp. at 1300. In affirming on appeal, this court stated specifically that the district court had not made specific findings regarding petitioner's participation in the persecution of Jews. *United States v. Palciauskas,* 734 F.2d 625, 626 (11th Cir.1984). The court held that the only fact necessary to denaturalize petitioner under 8 U.S.C. § 1451(a) was that petitioner had lied about his occupation during World War II. This lie constituted a material misrepresentation because the revelation of petitioner's actual position would, at the very least, have led to further investigation by various agencies. *Id.*, 734 F.2d at 628.

Later in 1984, the United States Immigration and Naturalization Service issued an order to show cause why petitioner should not be deported. The Order to Show Cause charged that Petitioner was deportable under 8 U.S.C. §§ 1251(a)(1)(A), (a)(1)(B), and (a)(19).[2] To support its motion for an order of deportation, the government relied, by application of collateral estoppel, on the facts litigated in the denaturalization proceedings. The immigration judge ordered petitioner deported to the Soviet Union, concluding that petitioner was precluded from relitigating the issue of the extent of his involvement in the persecution of Jews and whether he had materially misrepresented facts on the various documents required for entry and naturalization into the United States. Accordingly, the immigration judge found petitioner deportable under §§ 1251(a)(1)(A), (a)(1)(B), and (a)(19).[3] The Board of Immigration Appeals employed the same reasoning in affirming the deportation order. Petitioner now appeals to this court.

Petitioner asserts several issues on appeal. First, petitioner challenges the immigration courts' use of collateral estoppel. Second, petitioner argues that the immigration courts erred in finding him ineligible for discretionary relief from deportation. Third, petitioner contends that, even if he is excludable, the place of deportation should

2. Under 1990 amendments, §§ 1251(a)(1), (2), and (19) were renumbered as §§ 1251(a)(1)(A), (a)(1)(B), and (a)(19) respectively and are substantially unchanged. We will refer to these provisions by their new numbers throughout this opinion.

 Section 1251(a)(1)(A) provides:

 Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens excludable by the law existing at such time is deportable.

 Section 1251(a)(1)(B) provides:

 Any alien who entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or any other law of the United States is deportable.

 Section 1251(a)(19) provides for deportation when:

 (19) during the period beginning on March 23, 1933, and ending on May 8, 1945, under the direction of, or in association with—

 (A) the Nazi government of Germany,

 (B) any government in any area occupied by the military forces of the Nazi government of Germany,

 (C) any government established with the assistance or cooperation of the Nazi government of Germany, or

 (D) any government which was an ally of the Nazi government of Germany,

ordered, incited, assisted, or otherwise participated in the persecution of any person because of race, religion, national origin, or political opinion. . . .

3. The immigration courts ruled that petitioner was deportable under § 1251(a)(1)(A) because he was excludable at entry under § 10 of the Displaced Persons Act of 1948, Pub.L. No. 80–774 (62 Stat. 1009 ("DPA"). Section 10, which was the law existing at the time of petitioner's entry into the United States, provided, in pertinent part:

 Any person who shall willfully make a misrepresentation for the purpose of gaining admission into the United States as an eligible displaced person shall thereafter not be admissible into the United States.

Petitioner was held to have made such a misrepresentation in the prior denaturalization proceedings. *See Palciauskas v. United States,* 559 F.Supp. 1294 (M.D.Fla.1983), *aff'd,* 734 F.2d 625 (11th Cir.1984).

 Petitioner was held to be deportable under § 1251(a)(1)(B) because he entered the United States in violation of § 10 of the DPA, as found in the prior denaturalization proceedings.

 The immigration courts found that petitioner was deportable under § 1251(a)(19) because "facts established conclusively by collateral estoppel renders [sic] [petitioner] deportable pursuant to [8 U.S.C. § 1251(a)(19) ]. . . ." *In re Palciauskas,* No. A07 149 053, at 5 (Immigration Court, Atlanta, July 9, 1986).

be Germany or Lithuania, rather than the Soviet Union.[4]

## II. DISCUSSION

### A. *Application of Collateral Estoppel*

■ "The doctrine of collateral estoppel precludes a party from relitigating an issue that was fully litigated in a previous action." *Deweese v. Town of Palm Beach,* 688 F.2d 731, 733 (11th Cir.1982). The prerequisites for an application of collateral estoppel are: (1) that the issue at stake is identical to the one involved in the prior litigation; (2) that the issue was actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that earlier action.[5] *Id. See also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Cromwell v. County of Sac,* 95 U.S. 351, 353, 24 L.Ed. 681 (1877). "Even though an issue was fully raised and fully litigated in a prior action, and a finding on the issue was made by the court preliminarily to rendition of judgment, the issue is not concluded by the resulting judgment unless the finding made on the issue was ... necessary to the judgment." 1B J. Moore, *Federal Practice and Procedure* § 0.443[5.–1], at 781 (2d ed. 1988).

With respect to any findings that petitioner participated in the persecution of Jews (as required for deportation under § 1251(a)(19)), we conclude that any such findings were not necessary to the prior judgment and thus do not satisfy the third prerequisite for collateral estoppel. In the prior denaturalization proceedings, the district court did recite extensive facts surrounding petitioner's duties as Mayor, many of which might support a finding that petitioner participated in the persecution of people because of their religion within the meaning of 8 U.S.C. § 1251(a)(19), *see Palciauskas,* 559 F.Supp. at 1296–98. However, the district court also expressly declined to make "specific findings relative to possible active participation by [petitioner] in acts of persecution of Jews." *Id.* at 1300. Regardless of whether the district court made some findings relating to possible participation in acts of persecution of Jews, the significant fact for this appeal is that any such findings were not necessary to the judgment (i.e., the third prong of the test) because the judgment of the district court clearly rested upon the sole fact that petitioner misrepresented the material fact that he was mayor of Kaunas rather than an office clerk. 559 F.Supp. at 1300–01. Furthermore, on appeal this court agreed, concluding that the only fact necessary to the denaturalization judgment was whether petitioner misrepresented the material fact about his occupation in connection with his application for entry into the United States. *Palciauskas,* 734 F.2d at 628.

Although it is true that, in order to find material misrepresentation, it was necessary to find that petitioner was Mayor of

---

**4.** Petitioner presents several other arguments that are without merit and warrant no discussion.

**5.** The Board of Immigration Appeals defined the doctrine of collateral estoppel differently and thus incorrectly. The Board stated the elements as follows:

> [T]here must have been a prior judgment between the parties that is sufficiently conclusive to be accorded conclusive effect and the parties must have been accorded a full and fair opportunity to litigate the issues in the prior suit.... In addition, the use of collateral estoppel must not be unfair to the parties.

*In re Palciauskas,* No. A07 149 053, at 3 (B.I.A. May 7, 1990) (citing *Matter of Fedorenko,* Interim Decision No. 2963 (B.I.A. April 17, 1984)). The elements stated by the Board are factors used to avoid applying the collateral estoppel doctrine where it would be unfair. However, the doctrine will not be applicable at all unless the three part test stated in the text is satisfied. In fact, the case cited by the Board, *Matter of Fedorenko,* recognized that the doctrine applies only to "issues that were actually litigated and necessary to the outcome of the prior suit." *See generally,* 1B J. Moore, *Federal Practice and Procedure* §§ 0.441[2], [3], and [4], at 722–47 (2d ed. 1988). For example, it would be unfair to apply collateral estoppel to preclude relitigation of an issue actually litigated and necessary to the judgment in a prior action when one of the parties had no "incentive to ... vigorously" litigate an issue "by taking an appeal." *Deweese v. Town of Palm Beach,* 688 F.2d 731, 734 (11th Cir.1982).

Kaunas rather than an office clerk,[6] it was unnecessary to the judgment of denaturalization to find facts regarding petitioner's specific activities as Mayor. This court stated that petitioner's contention that he was no more than a "powerless figurehead" or otherwise did not collaborate with the Nazi regime was irrelevant because

> the fact remains that Palciauskas' service as Mayor was material to the various agencies that investigated him before he entered the United States. Testimony at trial showed that a more thorough check would have been made of Palciauskas had he revealed his mayoral position.

*Palciauskas*, 734 F.2d at 628. Of course, whether petitioner collaborated with Nazi persecutors is entirely relevant to the instant case, where an issue is whether petitioner is deportable under 8 U.S.C. § 1251(a)(19).

Furthermore, on appeal of the district court's denaturalization judgment, petitioner argued that he was denied a fair trial because the government obstructed his discovery efforts, that he was unable to conduct discovery in Lithuania due to the expense and futility of using the Soviet justice system, and that the district court erroneously failed to impose discovery sanctions against the government. *Id.* at 627. Petitioner also argued that it was error to admit depositions that were taken in the Soviet Union in the absence of his counsel, and that the district court erred by admitting "inherently unreliable" documents from Soviet archives. *Id.* This court did not reach any of these issues because the only fact necessary to support the judgment was that petitioner was mayor, which was apparently undisputed. Thus, some of petitioner's arguments in the prior denaturalization proceedings might have been meritorious, and the facts found in the prior action may have been derived from unreliable evidence or procedures.[7] However, it was unnecessary for this court or the district court to explore these issues in the prior proceedings.[8] Such a situation is one reason for the rule that only facts necessary to the judgment are given preclusive effect.

Therefore, the application of collateral estoppel to preclude relitigation of facts necessary to a finding that petitioner is deportable under 8 U.S.C. § 1251(a)(19) is inappropriate in this case.[9] Accordingly, we reverse and remand to the Board of Immigration Appeals for further proceedings consistent with this opinion.

### B. *The Place of Deportation*

■ Petitioner contends that the immigration courts erred by designating the Soviet Union as the place of deportation. Although we remand for further proceedings as discussed above, we will address

---

6. Petitioner's position as Mayor is what made the misrepresentation material because revelation of such position would, at the least, have led to further inquiry.

7. Of course, we express no view on petitioner's arguments in the prior denaturalization proceedings.

8. *See Palciauskas*, 734 F.2d at 627 ("Although the issues raised by Palciauskas are novel, complex, and in some respects troubling, we no not reach any of them ... [because of Palciauskas' material misrepresentation regarding his occupation].").

9. The Board of Immigration Appeals also applied collateral estoppel to find petitioner deportable under 8 U.S.C. § 1251(a)(1) and (2) (current versions at 8 U.S.C. §§ 1251(a)(1)(A) and (a)(1)(B)). Although petitioner may well have been properly precluded from relitigating these issues, we decline to address whether petitioner is deportable on these alternative grounds because the government has failed to raise these grounds on appeal. Of course, the government may urge that collateral estoppel be applied with regard to §§ 1251(a)(1)(A) and (a)(1)(B) in the proceedings on remand in the immigration courts.

In addition, whether petitioner is eligible for any of the various forms of discretionary relief from deportation may be affected by the result of the proceedings on remand. A finding that petitioner is deportable as one who participated in persecution under 8 U.S.C. § 1251(a)(19) would render him ineligible for certain forms of discretionary relief. *See, e.g.,* 8 U.S.C. §§ 1251(a)(4)(D), 1254(a) and (e). The immigration court shall reevaluate petitioner's eligibility for relief from deportation after making its factual findings and conclusions of law, and after considering the parties' arguments.

this issue to provide guidance for the proceedings on remand.

The designation of the country of deportation is governed by 8 U.S.C. § 1253(a).[10] Section 1253(a) establishes a three-level hierarchy of countries to which excludable aliens are to be deported. First, in most circumstances, the alien may promptly designate where he wants to go. This option is no longer available to petitioner because he refused to designate a country. Where the alien declines to make a proper designation, or if step one otherwise is not an available option, then the alien is deported to a country of which he is a subject, national, or citizen, if such country is willing to accept him into its territory. The immigration judge found that this option was also unavailable because petitioner is not a national or citizen of any country at the present time. Under step three of § 1253(a), the attorney general has discretion to deport an alien to any of the classes of countries listed in § 1253(a)(1) through (7), without any priority as to their order. The attorney general supported, and the immigration judge ordered, deportation to the Soviet Union pursuant to § 1253(a)(4) because the place of petitioner's birth, Lithuania, is currently under Soviet control.

Petitioner argues that this court should take note of the democratic changes and secessionist movements currently sweeping through the Soviet Union, including Lithuania. Therefore, petitioner contends that this court should conclude that either Germany or Lithuania, which may soon regain its independence from the Soviet Union, is the proper place of deportation. However, although we are aware of recent events in the Soviet Union, this does not provide a basis for reversing the attorney general's discretionary decision. Moreover, any change in United States' foreign policy resulting from reform movements in the Soviet Union must be addressed by the executive branch, not the federal courts. *See Flynn v. Shultz*, 748 F.2d 1186, 1191 (7th Cir.1984), *cert. denied*, 474 U.S. 830, 106 S.Ct. 94, 88 L.Ed.2d 77 (1985); *Shyu Jeng Shyong v. Esperdy*, 294 F.Supp. 355, 356 (S.D.N.Y.1969).

■ Under step three of § 1253(a), the attorney general may exercise discretion to

---

**10.** Section 1253(a) provides:

The deportation of an alien in the United States provided for in this chapter, or any other Act or treaty, shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States. No alien shall be permitted to make more than one such designation, nor shall any alien designate, as the place to which he wishes to be deported, any foreign territory contiguous to the United States or any island adjacent thereto or adjacent to the United States unless such alien is a native, citizen, subject, or national of, or had a residence in such designated foreign contiguous territory or adjacent island. If the government of the country designated by the alien fails finally to advise the Attorney General within three months following original inquiry whether that government will or will not accept such alien into its territory, such designation may thereafter be disregarded. Thereupon deportation of such alien shall be directed to any country of which such alien is a subject, national, or citizen if such country is willing to accept him into its territory. If the government of such country fails finally to advise the Attorney General or the alien within three months following the date of original inquiry, or within such other period as the Attorney General shall deem reasonable under the circumstances in a particular case, whether that government will or will not accept such alien into its territory, then such deportation shall be directed by the Attorney General within his discretion and without necessarily giving any priority or preference because of their order as herein set forth either—
(1) to the country from which such alien last entered the United States;
(2) to the country in which is located the foreign port at which such alien embarked for the United States or for foreign contiguous territory;
(3) to the country in which he was born;
(4) to the country in which the place of his birth is situated at the time he is ordered deported;
(5) to any country in which he resided prior to entering the country from which he entered the United States;
(6) to the country which had sovereignty over the birthplace of the alien at the time of his birth; or
(7) if deportation to any of the foregoing places or countries is impracticable, inadvisable, or impossible, then to any country which is willing to accept such alien into its territory.

deport an alien to any of the specified classes of countries without regard to any priority. In the instant case, the attorney general supported, and the immigration judge ordered, deportation to the Soviet Union as the "country in which the place of birth is situated at the time [of deportation]," 8 U.S.C. § 1253(a)(4), evidently not viewing such deportation as contrary to United States' foreign policy. Furthermore, the immigration judge might have designated the Soviet Union as the place of deportation in any event under 8 U.S.C. § 1253(a)(7). *See Linnas v. INS,* 790 F.2d 1024, 1031 (2d Cir.), *cert. denied,* 479 U.S. 995 [107 S.Ct. 600, 93 L.Ed.2d 600] (1986).[11]

Because the Board of Immigration Appeals improperly applied the doctrine of collateral estoppel, we reverse and remand for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

---

11. We reject as without merit petitioner's argument that the Soviet Union is not a proper country to deport him to because it is contiguous to the United States. Without addressing whether the Soviet Union's proximity to the United States across the Bering Straight renders it "contiguous," it is clear that the restriction on deportation to a contiguous country in § 1253(a) applies only to designation of a country by the alien under step one of § 1253(a).