# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

GENET GEBREGZIABHER DESTA;
TEKIE GIRMAY MELLES; FITSUM
MELLES,

      Petitioners,

v.

JOHN D. ASHCROFT, Attorney General,

      Respondent.

No. 01-9530

ORDER

Filed June 2, 2003

Before **TACHA**, Chief Judge, **McKAY**, and **HENRY**, Circuit Judges.

Respondent's motion for publication of the court's decision of April 11, 2003 is granted.  A copy of the opinion is attached.

Entered for the Court
PATRICK FISHER, Clerk of Court

by:
    Deputy Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

GENET GEBREGZIABHER DESTA;
TEKIE GIRMAY MELLES; FITSUM
MELLES,

          Petitioners,

    v.

JOHN D. ASHCROFT, Attorney General,

          Respondent.

No. 01-9530

PETITION FOR REVIEW FROM THE DEPARTMENT OF
IMMIGRATION & NATURALIZATION SERVICE
(Nos. A70 627 942; A70 627 943;
A70 627 944)

Kenneth H. Stern (Todd Irwin, with him on the briefs), Stern & Elkind, Denver,
Colorado, appearing for Petitioners.

Julia K. Doig, Senior Litigation Counsel (David M. McConnell, Deputy Director, with
her on the brief), Office of Immigration Litigation, Civil Division, United States
Department of Justice, Washington, DC, appearing for Respondent.

Before **TACHA**, Chief Circuit Judge, **McKAY**, and **HENRY**, Circuit Judges.

**TACHA**, Chief Circuit Judge.

## I. Background

The Immigration Judge ("IJ") denied petitioners asylum but withheld their deportation to Ethiopia. The Board of Immigration Appeals ("BIA") later designated Canada as the alternate country of deportation in order to correct the IJ's failure to designate an alternate country. Petitioners contend on appeal that they are entitled to asylum. In the alternative, they assert that, even if they were properly denied asylum, the BIA abused its discretion and denied them due process when it designated Canada as the alternate country of deportation. We exercise jurisdiction pursuant to 8 U.S.C. § 1105a[1] and deny the petition for review.

---

[1] Before 1996, we had jurisdiction to review final deportation orders under 8 U.S.C. § 1105a. In 1996, however, this provision was repealed by the Illegal Immigration Reform & Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009. Although Section 1105a was repealed by IIRIRA, it remains substantially in effect in those cases subject to IIRIRA's transitional rules. Because the INS commenced deportation proceedings against petitioners before April 1, 1997, the effective date of IIRIRA, and because the agency's final deportation order was entered after October 31, 1996, this case is governed by the pre-IIRIRA rules as amended by the transitional rules. *Woldemeskel v. INS*, 257 F.3d 1185, 1187 n.1 (10th Cir. 2001).

II. Discussion

A. *Governing Law*[2]

Petitioners do not contest the fact that remaining in the United States longer than permitted rendered them deportable. A deportable alien, however, may challenge deportation to a particular country and may seek asylum, which precludes deportation to any country. *See* 8 U.S.C. § 1158 (1994). When asylum is denied but deportation to one country is withheld, the Immigration and Naturalization Service ("INS") may deport the alien to another country. 8 U.S.C. § 1253(a), (h) (1994). The INS may also grant voluntary departure, allowing the alien to depart to the alien's country of choice within a prescribed time. 8 U.S.C. § 1254(e) (1994).

As for asylum, "the alien must prove that he or she is statutorily eligible for asylum by establishing that he or she is a refugee." *Kapcia v. INS*, 944 F.2d 702, 706 (10th Cir. 1991). Establishing refugee status requires proof of "either past 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Id*. (quoting 8 U.S.C. § 1101(a)(42)). An alien is not, however, entitled to asylum based on conditions in the alien's country of origin if the alien was firmly resettled in another country before arriving in the United

_____

[2] IIRIRA repealed and reorganized many of the provisions of the United States Code relevant to this case. Because prior law remains in effect for cases governed by IIRIRA's transitional rules, we cite where appropriate to the sections in effect prior to the amendments.

States and there is no ground for granting asylum from the second country. 8 C.F.R. § 207.1(b), (c).

Petitioners' status as refugees is not at issue in this case. Accordingly, on the asylum issue we need address only the question of firm resettlement. The agency's discretion is broad in this area; our review considers only "whether the discretion was exercised and, if so, whether it was exercised in a non-arbitrary and non-capricious manner." *Kapcia*, 944 F.2d at 708 (internal quotation marks omitted). For the reasons set forth below, we deny the petitions for review.

B.      *Factual and Procedural Background*

Mr. Melles and Ms. Desta are Ethiopian citizens of Tigrean ethnicity. After suffering persecution by both the Mengistu government and the Tigrean People's Liberation Front (TPLF), they separately fled Ethiopia into the Sudan, where they met and married. Mr. Melles applied for asylum in both Canada and the United States. Ms. Desta applied only in the United States. When Canada offered them landed immigrant status, they accepted, although they contend that they always intended to come to the United States, where Ms. Desta's sister and her family live. Mr. Melles and Ms. Desta remained in Canada for 18 months, during which time their son, Fitsum Melles, was born. They visited friends in Seattle, Washington, from July 6-10, 1993, and returned to Canada. On August 17, 1993, they entered the United States and stayed.

The INS initiated deportation proceedings in August 1995. At an initial hearing

before the immigration judge ("IJ") on January 3, 1996, petitioners conceded

deportability but sought asylum. In the alternative, they requested withholding of

deportation to Ethiopia and voluntary departure. They elected to "stand mute" rather than

provide an alternative to Ethiopia as the country of deportation.

After a second hearing – at which Mr. Melles, Ms. Desta, and other witnesses

testified – the IJ granted petitioners' request for withholding of deportation. Although the

IJ expressed agreement with the INS counsel that what the court was doing was simply

"withholding the deportation to Ethiopia," petitioners' attorney did not request an

alternate country of deportation, and the IJ failed to designate one.

During the second hearing, petitioners' counsel also addressed whether their 18

month stay in Canada precluded a grant of asylum. Under the "firm resettlement" rule,

persons who may otherwise be granted asylum because of conditions in their country of

origin are ineligible if they have firmly resettled in a third country where conditions

would not justify asylum from that third country. Denial of asylum is mandatory when

the alien has been firmly resettled. 8 C.F.R. § 208.13(c)(2)(i)(B). In his oral ruling, the IJ

concluded that petitioners had been firmly resettled in Canada and, accordingly, denied

their applications for asylum.

Petitioners appealed the denial of asylum to the BIA, challenging the validity of

the firm resettlement rule and arguing that they had not been firmly resettled. They also

alleged that Mr. Melles was threatened in Canada by members of an initially nonpolitical

Tigrean group, which had subsequently splintered over differences in opinion about the TPLF. The BIA affirmed the IJ's denial of asylum. The BIA also noted that the IJ had erred in failing to designate an alternate country of deportation and that petitioners had declined the opportunity to designate one. The BIA ordered that in the event petitioners failed to depart voluntarily, they would be deported to Canada.

On August 9, 2001, petitioners timely filed a petition with this court seeking judicial review of the BIA's decision. Six days later, they filed with the BIA a motion to reopen or reconsider. Their motion asserted resettlement in the United States and proffered evidence that Mr. Melles and Ms. Desta no longer had the right to live in Canada, although their son is a Canadian citizen by birth. In addition, the motion contended that the BIA's designation of Canada as an alternate country of deportation improperly overturned the IJ's unchallenged decision to grant withholding of deportation to Ethiopia. The BIA denied the motion, noting that even while petitioners challenged the BIA's designation of Canada as violative of due process, they did not seek to designate an alternate country of deportation.[3] The BIA specifically affirmed the IJ's grant of

---

[3] Specifically, the BIA stated:

As we explained in our previous decision, no purpose would be served by remanding the record for further proceedings on the place of deportation. The respondents could have designated the place of deportation themselves when they were in proceedings before the Immigration Judge. With assistance of counsel, they declined an opportunity to designate the place of deportation. Moreover, they are not seeking to exercise that right now either. They are asking for an evidentiary hearing on whether Canada is an appropriate place for deportation, but

withholding of deportation to Ethiopia.

C.     *Jurisdictional Limits on Scope of Review*

Before reaching the merits of petitioners' appeal, we must address a jurisdictional

matter.  Petitioners filed the present petition for review of the BIA's original decision but

did not separately seek our review of the BIA's denial of their motion to reopen or

reconsider, which they filed with the BIA shortly after they filed their notice of appeal.

Relying on *Stone v. INS*, 514 U.S. 386 (1995), the INS contends that we lack jurisdiction

to review matters raised in petitioners' motion to reopen or reconsider, even if those

matters were also raised in their petition to review the original BIA decision.  In our view,

this contention has no merit.  *Stone* precludes us from reviewing the merits of petitioners'

motion for reconsideration, but it does not preclude review of any issue properly raised in

the original petition.

In *Stone*, as in this case, the petitioner obtained a ruling from the BIA and then

filed a motion requesting that the BIA reconsider its ruling.  *Id*. at 389.  Unlike here,

however, the petitioner in *Stone* did not promptly seek judicial review of the BIA's

original ruling.  *Id*.  Rather, the petitioner filed his petition for review only after the BIA

---

they have not asked for a different country to be designated in its place, which they could have done.  We would have granted such a request unless the respondents' designation had violated the limitation set forth in Section 241(b)(2)(A) of the Act, 8 U.S.C. § 1251(b)(2)(B).  We therefore conclude that no purpose would be served by remanding this case to the Immigration Judge for further proceedings.

Respondent's Brief, Attachment 1 at 2-3.

had denied the motion to reconsider. *Id*. This denial was many months after the original ruling. *Id*. The Supreme Court held that petitioner's petition for review was untimely with respect to the BIA's original ruling on the IJ's decision. *Id*. at 406.

The core of the Court's holding was that the BIA's original ruling was a final order, despite the pendency of the motion to reconsider, and that the time to seek judicial review was therefore not affected by the motion to reconsider. The Court analogized the motion to reconsider to a motion to set aside a judgment under Rule 60(b) of the Federal Rules of Civil Procedure. The law is settled that a Rule 60(b) motion – unless filed within 10 days of the judgment being challenged, in which case the Rule 60(b) motion is treated as a motion under Rule 59(e) – does not affect the finality of the original judgment or the time within which a party may appeal the judgment. *Stone*, 514 U.S. at 401.

The INS appears to focus here on the statement in *Stone* that the BIA decision on the motion to reconsider is itself a final order. The INS argues that because that decision is itself a final order, the failure of petitioners to appeal the order binds them regarding each issue resolved in the decision, even if the issue is properly raised before this court in a petition for review of the original BIA decision.

We disagree. An unchallenged ruling by the BIA on a motion to reconsider is final in that it is separately appealable.[4] But it is not res judicata with respect to an issue

---

[4] According to the Supreme Court in *Stone*:

By its terms, § 106(a)(6) contemplates two petitions for review and directs

-8-

pending on judicial review of the original decision of the BIA. Once an issue is properly raised by a petition for review of the original decision, no purpose would be served by requiring the petitioner to raise the identical issue again in a petition to review the BIA's decision on the motion to reconsider. Thus, petitioners' filing of a motion to reopen or reconsider does not affect this court's jurisdiction.

D.    *Designation of Canada as Alternate Country of Deportation*

Petitioners challenge the BIA's decision to designate Canada as an alternate country of deportation. First, they contend that the BIA abused its discretion by "addressing an issue [not] raised by the parties." Noting that neither party appealed the withholding of deportation, they contend that the BIA may address an unraised issue only when it complies with 8 C.F.R. § 3.1(c), which requires notice of the certification of a "case" and an opportunity to submit a brief unless the parties have already been given "a fair opportunity to make representations before the Board . . . ." *Id.* Petitioners assert

the courts to consolidate the matters.  The words of the statute do not permit us to say that the filing of a petition for reconsideration or reopening dislodges the earlier proceeding reviewing the underlying order. The statute, in fact, directs that the motion to reopen or reconsider is to be consolidated with the review of the order, not the other way around. *This indicates to us that the action to review the underlying order remains active and pending before the court.*  We conclude that the statute is best understood as reflecting an intent on the part of Congress that deportation orders are to be reviewed in a timely fashion after issuance, *irrespective* of the later filing of a motion to reopen or reconsider.

*Stone*, 514 U.S. at 394 (emphasis added).

that, had they been given this opportunity, they would have presented evidence questioning whether Canada would allow them to reenter. They argue that it would be unfair for the INS to hold them in custody as deportable aliens while it investigated their status with respect to Canada.[5] Petitioners also suggest that the BIA's designation of Canada as the alternate country of deportation may have overturned the IJ's grant of withholding of deportation.

In our view, however, the BIA had the authority to designate an alternate country of deportation. As the BIA noted, withholding of deportation is country-specific. If a petitioner fails to designate an alternate country of deportation, or if a designated country will not accept the petitioner, the Attorney General may designate an alternate country. 8 U.S.C. § 1253(a) (1994); *see also Palciauskas v. I.N.S.*, 939 F.2d 963, 968 (11th Cir. 1991) (discussing § 1253(a)'s three-level hierarchy of countries to which excludable aliens may be deported and the Attorney General's options when designating alternative countries). Petitioners declined the opportunity to designate an alternate country at their first hearing. At the second hearing, the IJ erred by failing to designate one. The BIA specifically noted and corrected this error by designating Canada as the alternate country of deportation.

We disagree with petitioners' suggestion that the BIA's designation of an alternate

_____

[5] We note that petitioners are not in INS custody at this time. If the INS chooses to detain the petitioners, they may challenge such detention in a petition for habeas corpus.

country of deportation might have "either explicitly or implicitly" overturned the IJ's grant of withholding of deportation to Ethiopia. The language of the BIA's order does not raise doubts about the bar to deportation to Ethiopia, and the BIA's order denying reconsideration further clarified its intent to leave that aspect of the IJ's ruling intact. We also disagree with petitioners' characterization of the BIA's designation of Canada as a "change" or "substitution" of the country of deportation. Petitioners chose not to designate an alternate country of deportation in their application for withholding of deportation to Ethiopia, and in his oral decision, the IJ likewise failed to designate one; there was, then, no *change*, but rather the correction of an omission.

Petitioners likewise err in their contention that the BIA lacked the authority to correct the IJ's failure to designate a country of deportation. The rules governing appeals to the BIA authorize it to correct any error it discovers. Section 3.1(d)(1)(ii) states, in pertinent part: "Board members shall exercise their independent judgment and discretion in considering and determining the cases coming before the Board, and a panel or Board member to whom a case is assigned may take any action consistent with their authorities under the Act and the regulations as is appropriate and necessary for the disposition of the case." In the appeal before the BIA, there was plain error in the failure to declare the country to which the petitioners should be deported if they did not voluntarily depart.

The petitioners' reliance on 8 C.F.R. § 3.1(c) is misplaced. That provision provides:

The Commissioner, or any other duly authorized officer of the Service, any Immigration Judge, or the Board may in any case arising under paragraph (b) of this section certify such case to the Board. The Board in its discretion may review any such case by certification without regard to the provisions of § 3.7 [providing for notice of certification to the alien affected] if it determines that the parties have already been given a fair opportunity to make representations before the Board regarding the case, including the opportunity [to] request oral argument and to submit a brief.

Thus, § 3.1(c) allows the BIA to certify a "case" that otherwise could not properly be heard. *See, e.g., In re Kanagasundram*, 22 I&N Dec. 963 (BIA 1999) (considering a case on certification where the IJ certified the case to the BIA); *Matter of Correa-Garces*, 20 I&N Dec. 451 (BIA 1992) (BIA took an untimely appeal on certification in order to reverse in part an IJ's decision). Although there has been at least one occasion on which the BIA has cited § 3.1(c) as authority to consider an "issue" in a case already before it, *Matter of Hernandez-Ponce*, 19 I&N Dec. 613, 1988 WL 235444 (BIA 1988), the clear import of the provision is not to authorize correction of a single error in an appeal already before it, but to authorize the BIA to hear an appeal, and that has been by far its most common use.

Nor do we agree with petitioners' claim that the BIA denied them due process. To the extent that petitioners are arguing that the designation of the country of deportation should have been made by the IJ (which would apparently have avoided the potential need to hold them in custody while their status in Canada was being investigated), they waived the argument by standing mute before the IJ when asked to name an alternative to

Ethiopia as a country of deportation and by failing to raise the issue later in the proceedings. Petitioners were not ignorant of the issue; they were represented by capable counsel from the outset. Whatever the reasons for their tactical decision to let the issue slide in the proceedings before the IJ, that decision forecloses their present complaint.

Nor did the BIA's designating a country of deportation without first hearing petitioners' argument and evidence deny them due process. Given petitioners' refusal to suggest a country of deportation, the initiative on the matter lay with the INS. There was no denial of due process when the INS (through the BIA) first designated a country of deportation and then allowed the petitioners to raise their objections. In *Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962), the Supreme Court upheld the district court's order dismissing the plaintiff's case for failure to prosecute after the plaintiff's attorney failed to appear at a pretrial conference. Responding to the plaintiff's claim that he was denied due process by the district court's failure to conduct a hearing prior to dismissal, the Supreme Court said:

> Nor does the absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing necessarily render such a dismissal void. It is true, of course, that "the fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 246 (1944). But this does not mean that every order entered without notice and a preliminary adversary hearing offends due process. The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct. The circumstances here were such as to dispense with the necessity for advance

-13-

notice and hearing.

> In addition, the availability of a corrective remedy such as is provided by Federal Rule of Civil Procedure 60(b) – which authorizes the reopening of cases in which final orders have been inadvisedly entered – renders that lack of prior notice of less consequence. Petitioner never sought to avail himself of the escape hatch provided by Rule 60(b).

*Id*. at 632. Likewise, here the petitioners knew that the INS would have to name the country of deportation at some point, explicitly waived their opportunity to raise the matter before the IJ, and, perhaps dispositively, had the opportunity to move the BIA for reconsideration. There is no question that petitioners were free to request the BIA modify its designation of Canada as the alternate country of deportation in a motion to reconsider. *See Henry v. I.N.S.*, 8 F.3d 426, 431 (7th Cir. 1993) (The BIA granted petitioner's motion to reconsider Croatia, rather than Yugoslavia, as country of deportation after Croatia declared its independence from Yugoslavia, in order to effect the intent of the original order that petitioner be returned to his homeland.). In response to the motion for reconsideration, the BIA would need to consider petitioners' legal arguments and conduct an evidentiary hearing (perhaps by remand to the IJ) with respect to any properly raised and supported factual contentions relevant to the matter. Indeed, petitioners filed a motion for reconsideration, and the BIA dealt with it on the merits.

Because the petitioners did not seek judicial review of the BIA's ruling on that motion, the merits of the ruling are not before us. That, however, is irrelevant to petitioners' due process claim. Petitioners were given an opportunity to address the

BIA's designation of an alternate country of deportation in their motion to reconsider. Petitioners were represented by competent counsel. When asked by the IJ to designate an alternate country of deportation, they explicitly declined, choosing instead to stand mute on the matter. Under these circumstances, we find no violation of the petitioners' procedural due process rights.

E.      *BIA's Finding of Firm Resettlement*

Petitioners were denied asylum because they had firmly resettled in Canada after leaving Ethiopia and before arriving in this country. In general, "[a]n alien is considered to be firmly resettled, if prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement . . . ." 8 C.F.R. § 208.15. There are, however, exceptions to the general rule. On appeal, petitioners rely on the exception for aliens who establish that their stay in the transit country was "a necessary consequence of [their] flight from persecution, that [they] remained in that country only as long as was necessary to arrange onward travel, and that [they] did not establish significant ties to that country." *Id*. They assert that they entered Canada only because they desperately needed to leave the Sudan, and that their stay in Canada was "occasioned by the time it took to procure travel documents and by the birth of their child." Petitioners contend that the BIA dismissed their firm-resettlement arguments in only four short sentences, which, they argue, failed to provide reasoning for the BIA's decision and

demonstrated a failure to consider all the evidence.

As noted above, we review the agency's decision on this issue for an abuse of discretion. That is, we require only a "rational connection between the facts found and the choice made." *Woldemeskel*, 257 F.3d at 1189 (citation and internal quotation marks omitted). While petitioners' argument might have persuasive force on a de novo review, we disagree with petitioners' assertion that the BIA's opinion provided no basis for its decision or demonstrated a failure to consider the evidence. The BIA concluded that petitioners had established significant ties with Canada because of their protracted stay in that country, their status as landed immigrants, and the birth of their son, a Canadian citizen. In addition, the BIA could infer that petitioners did not stay in Canada "only as long as necessary to arrange onward travel." Petitioners offered no evidence that they could not have obtained travel documents for the United States sooner; on the contrary, they paid a four-day visit to this country one month before they entered to stay. We cannot say that a rational connection between the facts and the BIA's conclusion is lacking, and we may not "substitute our judgment for that of the BIA." *Id*. We find no abuse of discretion in the BIA's finding that petitioners were firmly resettled in Canada.

### III. Conclusion

For these reasons, the petitions for review are DENIED. The motion by Respondent to amend the caption is GRANTED. The motion by Petitioners to

supplement the administrative record is GRANTED.

**No. 01-9530,** *Desta v. INS*

**McKay**, **Circuit Judge, concurring in part and dissenting in part:**


I agree with the majority that Petitioners are clearly refugees and that that itself is not an issue in this case.  I also agree that they are entitled to seek asylum which precludes deportation to any country.  It is also clear that when asylum is denied, the INS may deport the refugee to another appropriate country.  I also agree that withholding of deportation, which the immigration judge ordered in this case, does not preclude the Attorney General from designating an alternate country.  I cannot agree, however, that by merely standing mute when given an opportunity to designate an alternate country Petitioners waived their right to challenge that country as appropriate.

In this case, the immigration judge merely withheld deportation and did not designate an alternative country.  On appeal, the BIA, on its own motion, designated Canada with no notice or opportunity for Petitioners to challenge that designation as an appropriate country.  As I understand the record, the BIA did not consider the merits of Petitioners' objections to Canada as an appropriate alternative country, even on petition for reconsideration.  The BIA, like the panel in this case, apparently took the view that by failing to designate an alternative country Petitioners had waived the right to object to the appropriateness of the country designated by the BIA.

While it is not a part of the record in this case, at argument counsel suggested that in similar cases it is not uncommon for aliens to stand mute when given an opportunity to

designate an alternative country. In any event, that standing alone cannot be viewed as waiving the right to challenge the appropriateness of the country eventually named by the BIA. It is altogether possible, and may in fact be true in some cases, that no country is appropriate as an alternative for persons who are in fact refugees. No cases and nothing in logic suggests that refugees have a duty to choose or even know which alternative country would be appropriate. If, as in this case, one is chosen for them, the minimum due process required is that they be given an opportunity to be heard on the question of appropriateness of that particular country. In this very case, it is conceded that the Sudan, through which they passed, would not be appropriate. Had that country been designated by the BIA, it hardly seems arguable that Petitioners waived the right to challenge that designation merely because they did not pick their own poison.

While such record as we have suggests that Canada _may_ be an appropriate country, Petitioners' challenge to that designation has not been heard on the merits. Indeed, at argument there was some dialogue with counsel about what would happen if Canada refused them reentry. While that came to no resolution, it illustrates why a sound rule requires that when the BIA designates on its own motion an alternative country, Petitioners are entitled at a minimum to a hearing on their objection.

While perhaps a little over-dramatic, by analogy, this case is like the case of one given the death penalty in Utah. That person is given a choice between two forms of execution. By failing to choose which form, it cannot be argued that the accused has

-2-

waived the right to challenge, on the grounds of Cruel and Unusual, the manner selected for him by the judge.

I would remand for a hearing on the merits of Petitioners' objections to the designation of Canada as an appropriate alternative country of deportation.