[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-16317

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 19, 2005
THOMAS K. KAHN
CLERK

Agency No. A35-557-998

MARLENE JAGGERNAUTH,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(December 19, 2005)**

Before BARKETT and MARCUS, Circuit Judges, and GEORGE[*], District Judge.

_____

[*]Honorable Lloyd D. George, United States District Judge for the District of Nevada,
sitting by designation.

PER CURIAM:

Marlene Jaggernauth petitions for review of the Board of Immigration Appeals' ("BIA") November 14, 2003 order affirming the Immigration Judge's ("IJ") order of removal based on a finding that Jaggernauth's conviction in 2001 for grand theft under Florida Statutes § 812.014(1) constituted an aggravated felony under § 101(a)(43)(G) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(G) (2000), subjecting her to deportation under § 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii).

Jaggernauth argues that Florida Statutes § 812.014(1) is a divisible statute encompassing some offenses that constitute deportable aggravated felonies and some that do not, and that because the record is unclear as to whether she was convicted under the portion of § 812.014(1) that encompasses deportable felonies, the BIA erred in finding her removable. Jaggernauth further argues that the BIA erred in failing to reverse the IJ's finding that she had been convicted of two or more crimes involving moral turpitude, subjecting her to deportation under § 237(a)(2)(A)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(ii).

The government has moved to dismiss the appeal, arguing that we lack jurisdiction to review the BIA's November 14, 2003 order of removal because it is no longer "final." The government maintains that the order of removal was rendered non-final by a January 21, 2004 BIA order granting Jaggernauth's motion

2

for reconsideration.  The government argues that the grant of reconsideration "implicitly vacated" the order of removal, and that because Jaggernauth failed to appeal the order granting reconsideration, we must refuse to hear this appeal.

For the reasons explained below, we conclude that we have jurisdiction to consider this appeal, as the BIA's reconsideration order does not alter the November 14, 2003 order of removal or affect its finality.  Thus, the November 14, 2003 order is a "final order of removal" for jurisdictional purposes.  In addition, we agree with Jaggernauth that the BIA erred in concluding that she was removable because she had been convicted of an "aggravated felony" as defined by the INA.

## I. Relevant Facts and Procedural History

Jaggernauth is a 39-year-old native and citizen of Trinidad and Tobago who lawfully entered the United States on November 18, 1977 when she was twelve years old.  She was a lawful permanent resident until 2003, when she was ordered removed in the present proceedings.  The removal order at issue concerns Jaggernauth's April 1997 nolo contendere plea and conviction for grand theft under Florida Statutes § 812.014(1).  That section provides that:

> A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently:

3

(a) Deprive the other person of a right to the property or a benefit from the property.

(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1). For this conviction, Jaggernauth was initially sentenced to probation, though she was later sentenced to six months' imprisonment after a probation violation.

On May 29, 2001 Jaggernauth pleaded nolo contendere and was again convicted of grand theft under Florida Statutes § 812.014(1) as well as the misdemeanor offense of resisting a merchant under Florida Statutes § 812.015(6). The 2001 Information charging Jaggernauth with grand theft tracked the general language of § 812.014(1). The Information did not specify under which subsection Jaggernauth was charged or whether the alleged deprivation was temporary or permanent.

For her grand theft conviction, Jaggernauth was sentenced to a suspended one-year term of imprisonment as well as probation. For her misdemeanor conviction for resisting a merchant, she was sentenced to 132 days of imprisonment. Jaggernauth has no other convictions.

The INS instituted removal proceedings against Jaggernauth on January 16, 2003 based on her 1997 conviction for grand theft and her 2001 conviction for grand theft and resisting a merchant. The INS charged that Jaggernauth's 2001

4

grand theft conviction rendered her removable under 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as that term is defined in 8 U.S.C. § 1101(a)(43)(G). As a separate basis for removal, the INS also charged that Jaggernauth was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien convicted of two crimes of moral turpitude not arising out of a single scheme of criminal misconduct. Jaggernauth, appearing pro se before the IJ, admitted that she had been convicted of and sentenced for the crimes forming the basis of the removal proceedings. However, she did not concede that she was removable from the United States on account of these convictions.

The IJ ordered Jaggernauth removed and deported to Trinidad and Tobago on the grounds that she had been convicted of: (1) an aggravated felony under 8 U.S.C. § 1101(a)(43)(G), which was based on her 2001 grand theft conviction; and (2) two crimes involving moral turpitude based on her 1997 and 2001 grand theft convictions.

Jaggernauth timely appealed the IJ's decision to the BIA. On November 14, 2003 the BIA dismissed the appeal, affirming the IJ's conclusion that Jaggernauth is an aggravated felon and upholding the IJ's order of removal. The BIA order stated that § 812.014(1) appeared to be a divisible statute, encompassing some offenses that constitute deportable aggravated felonies and some that do not, but concluded that the record of conviction established that the grand theft offense

with which she was charged was in fact an aggravated felony.[1]  The BIA did not address the issue of whether or not Jaggernauth was independently removable as an alien convicted of two crimes of moral turpitude.

On December 12, 2003 Jaggernauth filed the instant petition for review of the BIA's November 14, 2003 order upholding the IJ's order of removal in this court.  On December 13, 2003 Jaggernauth also filed a timely motion to reconsider the November 14, 2003 order to the BIA.  On January 21, 2004 the BIA granted Jaggernauth's motion to reconsider, and upheld and affirmed the IJ's order of removal and the BIA's November 14, 2003 order, without changing the legal basis for the decision: that Jaggernauth had committed an aggravated felony.  The BIA again did not address the IJ's determination that Jaggernauth had been convicted of two crimes of moral turpitude.

On February 27, 2004 Jaggernauth was physically deported from the United States.

**II. Standards of Review**

---

[1]The record of conviction includes the charging document, plea, verdict or judgment, and sentence.  See In re Ajami, 22 I. & N. Dec. 949, 950 (BIA 1999).  In this case, the BIA looked to the 1998 Information for grand theft and resisting a merchant, which alleges that Jaggernauth "did unlawfully, while committing or after committing theft of property, resist the reasonable effort of a merchant or merchant's employee to recover the property which the merchant or merchant's employee had probable cause to believe the said defendant had concealed or removed from its place of display or elsewhere." Nov. 14, 2003 Order, at 2.

We review questions concerning our jurisdiction de novo. Ortega v. U.S. Att'y Gen., 416 F.3d 1348, 1350 (11th Cir. 2005). We review the BIA's statutory interpretation de novo, but will defer to the BIA's interpretation of a statute if it is reasonable and does not contradict the clear intent of Congress. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-44 (1984); Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

### III. Discussion

*A. Subject Matter Jurisdiction*

Before reaching the merits of Jaggernauth's claim on appeal, we must first address whether or not we have jurisdiction to review the order on appeal. Under INA § 242(a)(1), 8 U.S.C. § 1252(a)(1), we are limited to reviewing "final order[s] of removal." See Balogun v. U.S. Att'y Gen., 304 F.3d 1303, 1307 (11th Cir. 2002). The government does not dispute that the IJ's removal order became "final" when it was affirmed by the BIA on November 14, 2003. See also 8 C.F.R. § 1241.1 ( "An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the [INA] shall become final: (a) Upon dismissal of an appeal by the Board of Immigration Appeals"). The issue of contention between the parties is whether that final order of removal remained final once the BIA issued a second order granting reconsideration and affirming the removal order.

7

To seek judicial review of an order of removal, an alien must file a petition for review with the federal appellate court within 30 days of the BIA's issuance of the final order.  See 8 U.S.C. § 1252(b)(1)-(2).  In addition, and as occurred in the present case, the petitioner may simultaneously move for reconsideration before the BIA within 30 days of the BIA's issuance of the final order of removal.  See 8 C.F.R. § 1003.2(b).  According to statute, "[w]hen a petitioner seeks review of an order [of removal], any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order."  8 U.S.C. § 1252(b)(6).

The Supreme Court has held that a petitioner's filing to the BIA of a motion to reconsider a final deportation order does not render the order non-final.  Stone v. INS, 514 U.S. 386 (1995).  In Stone, the petitioner waited to appeal the BIA's final deportation order until after the BIA denied the petitioner's motion for reconsideration, at which time he appealed both orders.  The petitioner argued that the filing of the reconsideration motion tolled the statutory time period for filing for review of the final deportation order, and thus his appeal of both orders was timely.  The Court disagreed.  The Court explained that section 106(a)(1) of the INA, 8 U.S.C. § 1105a(a)(1), contemplated two petitions – one of the BIA's final deportation order and another of the BIA's order on a motion for reconsideration – which are to be consolidated for review.  The Court then concluded:

8

> The consolidation provision in § 106(a)(6) reflects Congress' understanding that a deportation order is final, and reviewable, when issued. Its finality is not affected by the subsequent filing of a motion to reconsider. The order being final when issued, an alien has 90 days from that date to seek review. The alien, if he chooses, may also seek agency reconsideration of the order and seek review of the disposition upon reconsideration within 90 days of its issuance. Where the original petition is still before the court, the court shall consolidate the two petitions.

Stone, 514 U.S. at 405-06.

Stone does not resolve the present case.[2] While it makes clear that the finality of the November 14, 2003 order of removal was not disturbed by Jaggernauth's filing of a motion for reconsideration, and thus that Jaggernauth's appeal of the November 14, 2003 order was properly brought before this Court, the question before us here is what effect the BIA's grant of reconsideration and affirmance of its initial order had on the finality of that order. The government argues that the grant of reconsideration rendered the November 14 order non-final, and therefore that Jaggernauth was required to appeal the ruling on the motion for reconsideration in order to obtain judicial review in this case. For several reasons, we disagree.

---

[2] Stone was decided prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 ("IIRAIRA"). However, like its predecessor, the INA post- IIRAIRA provides for an alien to seek judicial review of the BIA's final removal order as well as of the BIA's ruling on reconsideration, and further provides for the consolidation of those two petitions for review on appeal. See 8 U.S.C. § 1252(b)(1)-(2), (6).

8 C.F.R. § 1003.2(i) instructs that when the BIA grants reconsideration, "the decision upon . . . reconsideration shall affirm, modify, or reverse the original decision made in the case." The BIA's January 21, 2004 order stated, "We will grant the respondents' motion, but we will uphold our earlier finding [that Jaggernauth is removable as having been convicted of an 'aggravated felony']."

The January 21, 2004 order included some additional commentary:

> Even if [our reliance on Jaggernauth's simultaneous conviction for Resisting a Merchant while engaged in theft] was in error, as the respondent claims, the case law of Florida shows that a conviction for grand theft under Fla. Stat. § 812.014(1) necessarily constitutes a theft offense for the purposes of section 101(a)(43)(G) of the [INA]. According to the case law, the intent to steal or deprive the victim of the victim's property is a necessary element of grand theft.

We do not believe the BIA intended its second order to incorporate this new commentary into its original order or otherwise change the substance of the original order. The January 21 order explicitly upholds the November 14 order and concludes that the BIA "acted properly" when it issued the November 14 order, suggesting the BIA's intent was to leave the November 14 order, as well as the reasoning underlying the order, intact and unmodified.

We note that there is nothing in the INA that <u>requires</u> Jaggernauth to seek judicial review of the BIA's reconsideration order. As explained by the Second Circuit in <u>Khouzam v. Ashcroft</u>, 361 F.3d 161, 167 (2d Cir. 2004), "[a]lthough § 1252(b)(6) would have allowed [the petitioner] to petition us to review the [BIA's

10

ruling on reconsideration] along with the [final order of removal], it does not require him to follow that course." See also Desta v. Ashcroft, 329 F.3d 1179, 1183-84 (10th Cir. 2003) ("An unchallenged ruling by the BIA on a motion to reconsider is final in that it is separately appealable. But it is not res judicata with respect to an issue pending on judicial review of the original decision of the BIA.").

While we have found little caselaw discussing motions for reconsideration in immigration proceedings from this Circuit, our decision today is supported by precedent from two of our sister Circuits. In Khouzam and Desta, the Second and Tenth Circuits, respectively, held that they retained jurisdiction to review the BIA's final orders of removal notwithstanding the BIA's subsequent orders on reconsideration. The Desta Court explained:

> Once an issue is properly raised by a petition for review of the original decision, no purpose would be served by requiring the petitioner to raise the identical issue again in a petition to review the BIA's decision on the motion to reconsider. Thus, petitioners' filing of a motion to reopen or reconsider does not affect this court's jurisdiction.

329 F.3d at 1184; see also Khouzam, 361 F.3d at 167 (court had jurisdiction to review BIA's final order of removal notwithstanding petitioner's failure to seek judicial review of BIA's ruling denying reconsideration and clarifying the reasoning behind the prior order). Although both Desta and Khouzam dealt with denials of reconsideration, the reasoning is nevertheless applicable here, where the grant of reconsideration actually upheld and affirmed the conclusions of the prior order. Cf.

11

Khouzam, 361 F.3d at 167 (where BIA's denial of reconsideration upheld previous final order of removal but clarified its legal reasoning).

Because the November 14, 2003 order of removal, having been affirmed by the January 21, 2004 order, is final, we have limited jurisdiction over the petition for review in this case.

### B. Is a Violation of Florida Statutes § 812.014(1) an Aggravated Felony for Purposes of the INA?

In order to find that Jaggernauth was convicted of an aggravated felony based on her 2001 conviction under § 812.014(1), the BIA was required to find that the INS established by "clear, unequivocal, and convincing evidence" that she committed a "theft offense" as that term is used in the INA – specifically, that she took property with the criminal intent to deprive another of rights to and benefits of the property. See Woodby v. INS, 385 U.S. 276, 286 (1966). Jaggernauth argues that the BIA erred in determining that her 2001 conviction for grand theft was an "aggravated felony," because the Florida grand theft statute encompasses both aggravated felonies and non-aggravated felonies, and there was no clear and convincing evidence to support the conclusion that she was convicted under the subsection dealing with aggravated felonies. The government did not respond to these arguments in its initial brief, instead relying exclusively on its jurisdictional

12

argument discussed above. However, the government was asked at oral argument to submit supplemental briefs on this issue, and we now resolve it.

The term "aggravated felony" is defined in the INA to include "a theft offense . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). It is undisputed that the length of the sentence for Jaggernauth's 2001 grand theft conviction was one year. Therefore, if it is a theft offense, it is an aggravated felony. See United States v. Christopher, 239 F.3d 1191, 1193 (11th Cir. 2001) (a theft offense is an aggravated felony if the "term of imprisonment is at least one year" regardless of any suspension of the sentence imposed).

We have never before addressed whether a conviction under Fla. Stat. § 812.014(1) necessarily constitutes a theft offense for purposes of the aggravated felony definition. Congress has not defined a "theft offense" in the INA, and a plain reading of 8 U.S.C. § 1101(a)(43)(G) does not reveal its meaning. However, the BIA has stated that "a taking of property constitutes a 'theft' whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." In re V-Z-S-, 22 I. & N. Dec. 1338, 1346 (BIA 2000). Other Circuits have adopted similar definitions. See, e.g., United States v. Corona-Sanchez, 291 F.3d 1201, 1205 (9th Cir. 2002) (defining theft offense as "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of

13

ownership, even if such deprivation is less than total or permanent"); United States

v. Vasquez-Flores, 265 F.3d 1122, 1125 (10th Cir. 2001) (same);

Hernandez-Mancilla v. INS, 246 F.3d 1002, 1009 (7th Cir. 2001) (same).

To determine whether Jaggernauth's conviction was for a "theft"

encompassed in the INA's definition of an aggravated felony, we first look to the

fact of conviction and the statutory definition of the offense.  See In re Batista-

Hernandez, 21 I. & N. Dec. 955, 970 (BIA 1997) (citing Taylor v. United States,

495 U.S. 575 (1990)).  Florida Statutes § 812.014 (1) provides that:

> (1) A person commits theft if he or she knowingly obtains or uses, or
> endeavors to obtain or to use, the property of another with intent to,
> either temporarily or permanently:
>
>> (a) Deprive the other person of a right to the property or a
>> benefit from the property.
>>
>> (b) Appropriate the property to his or her own use or to the use
>> of any person not entitled to the use of the property.[3]

The plain language of § 812.014(1) does not explicitly state whether the

requirement of an intent to deprive another of the rights and benefits of property,

under subpart (a) of § 812.014(1), and the intent to appropriate property for one's

own use, under subpart (b) of § 812.014(1), are to be read conjunctively or

disjunctively.  Florida courts, however, have consistently interpreted the section in

---

[3]Jaggernauth was convicted of grand theft in the third degree, a third degree felony.
Florida Statutes § 812.014(2)(c)(1) defines grand theft in the third degree as offenses where the
property stolen is valued at $300 or more.

the disjunctive, to articulate two distinct levels of intent.  For example, in T.L.M. v.

State, 755 So. 2d 749, 751 (Fla. Dist. Ct. App. 2000), the court stated that "Section

812.014 requires a finding of specific criminal intent to either (a) 'deprive' the other

person of a right to the property or a benefit therefrom or (b) 'appropriate' the

property to his own use or to the use of any person not entitled thereto."  Id. at 751

(emphasis added).  See also Canady v. State, 813 So. 2d 161, 161 (Fla. Dist. Ct.

App. 2002) ("The evidence was insufficient to prove [the defendant's] criminal

intent to deprive another person of property, or to appropriate the property, as

required under section 812.014") (emphasis added); Allen v. State, 690 So. 2d

1332, 1333-34 (Fla. Dist. Ct. App. 1997) ("The evidence, therefore, was sufficient

to allow the jury to find the appellant guilty of grand theft because he knowingly

used the property of another with intent to either temporarily or permanently

deprive the owner of a right to his property or to appropriate the property to his own

use in violation of sections 812.014(1) and 812.014(2)(c))" (emphasis added).  In

this Circuit, we have similarly read an "or" into § 812.014(1) between subpart (a)

and subpart (b), and have interpreted the section as encompassing two separate

levels of intent.  See Messer v. E.F. Hutton & Co., 833 F.2d 909, 921 (11th Cir.

1987) ("[Section 812.014(1)] provides for liability only if the property is used or

obtained 'with intent to, either temporarily or permanently, . . . deprive the other

person of a right to the property or the benefit therefrom . . . [or] appropriate the

15

property to his own use or to the use of any person not entitled thereto.'" (quoting §812.014(1)).[4]

Because two distinct intent standards exist in § 812.014(1), we cannot say that both subparts would necessarily involve an intent to deprive another person of a right to the property or a benefit from the property. To interpret the statute in this way would make subpart (b) superfluous, thereby violating the well-established rule of statutory construction that courts must give effect, if possible, to every clause and every word of a statute. See Williams v. Taylor, 529 U.S. 362, 404 (2000) (holding that 28 U.S.C. § 2254(d)(1), which includes two disjunctive clauses, must be read so as to give independent meaning to both clauses). Moreover, it would ignore the plain meaning of "appropriation," which is defined as the "exercise of control over property; a taking of possession," see Black's Law Dictionary at 98 (7th ed. 1990),

---

[4]The Information filed against Jaggernauth for her 2001 grand theft charge likewise acknowledges the disjunctive character of the intent elements of § 812.014(1). The Information alleges that Jaggernauth:

> [D]id unlawfully and knowingly obtain or endeavor to obtain or to use the property of another, to wit: merchandise, the property of Beall's Department Store and/or Randy Denniston as owner or custodian, of the value of $300 or more, but less than $5,000 with the intent to either permanently or temporarily deprive the true owner of a right to the property or a benefit therefrom or to appropriate the property to the use of the taker or to the use of any person not entitled thereto.

Information at 1 (emphasis added).

16

and which would not necessarily entail that the property owner be deprived his or her rights to the property's use or benefits.

Given the above evidence that § 812.014(1) involves two different types of intent, we agree with Jaggernauth that the statute is "divisible" – that is, it contains some offenses that are aggravated felonies and others that are not.[5] See In re Sweetser, 22 I. & N. Dec. 709, 713-14 (BIA 1999) (where a statute includes some offenses that are aggravated felonies and others that are not, it is treated as a divisible statute). If Jaggernauth was convicted under subpart (a), her taking of property would have involved an intent to "deprive the owner of the rights and benefits of ownership," and would therefore qualify as a "theft" as defined by the BIA. See In re V-Z-S-, 22 I. & N. Dec. at 1346. However, if Jaggernauth was convicted under subpart (b), which requires only an intent to "appropriate use" of the property, her offense would not necessarily constitute a "theft" under the BIA's definition, because she lacked the requisite intent to deprive the owner of the rights and benefits of ownership. Cf. Nevarez-Martinez v. INS, 326 F.3d 1053 (9th Cir. 2003) (holding that certain sections of the Arizona statute for "theft of a means of transportation" did not contain the "criminal intent to deprive the owner" and were

---

[5]We note that the BIA found that the statute was divisible in its November 14, 2003 order, but then concluded that the record of conviction sufficiently established that Jaggernauth intended to deprive the owner of the property, and not merely temporarily use the property and return it to its owner. See Nov. 14, 2003 Order at 2.

therefore not properly considered "thefts" for purposes of the aggravated felony definition of the INA).

Because § 812.014(1) is a divisible statute, the fact of conviction and the statutory language alone are insufficient to establish – by "clear, unequivocal, and convincing evidence" – under which subpart Jaggernauth was convicted. See Woodby v. INS, 385 U.S. 276, 286 (1966) ("no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true"). Accordingly, the BIA was permitted to look to the record of conviction to determine whether her offense for "grand theft" constitutes an aggravated felony. See In re Sweetser, 22 I. & N. Dec. at 714. As stated supra (see note 1), the record of conviction includes the charging document, plea, verdict or judgment, and sentence, see In re Ajami, 22 I. & N. Dec. 949, 950 (BIA 1989), but does not include the police report. See In re Teixeira, 21 I. & N. Dec. 316, 319 (BIA 1996).

The record of conviction introduced in this case – the Information, plea, judgment and sentence – do not provide clear, unequivocal and convincing evidence that Jaggernauth's 2001 grand theft conviction under § 812.014(1) was for a taking with the intent to deprive another of their rights or benefits of property. First, the Information explicitly charges Jaggernauth in the disjunctive, and thus does not support the conclusion that she was charged under subpart (a) rather than

18

subpart (b) of § 812.014(1). <u>See</u> Information at 1. Second, the written plea and sentencing documents similarly reference the general statutory provision, § 812.014(1), without specific mention that Jaggernauth was convicted of either subparts (a) or (b).

Third, we disagree with the BIA that Jaggernauth's simultaneous conviction for resisting a merchant establishes that her grand theft conviction was an aggravated felony. The BIA was permitted to look only at the record of conviction for the offense alleged to be an aggravated felony – not to the record of a separate misdemeanor offense. We can find no authority, and the BIA cites none in its order, that permits the combining of two offenses to determine whether one or the other is an aggravated felony. <u>Cf.</u> <u>Matter of Short</u>, 20 I. & N. Dec. 136, 139 (BIA 1989) (holding that IJ could not rely on a separate conviction to determine whether the conviction at issue was a crime of moral turpitude, and stating that moral turpitude cannot be viewed as "aris[ing] from some undefined synergism by which two offenses are combined to create a crime involving moral turpitude, where each crime individually does not involve moral turpitude"). In any event, the Information on the resisting a merchant charge provides no information as to whether Jaggernauth either intended to deprive another of the rights and benefits of property under § 812.014(1)(a), or merely intended to appropriate property to her own use under § 812.014(1)(b). Her alleged resistance to the merchant could have

been motivated by any number of factors other than an intent to deprive another of rights and benefits of property.

Because it has not been clearly established that Jaggernauth's 2001 conviction for grand theft is an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G), we conclude that the BIA erred in upholding Jaggernauth's removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).  Moreover, because Jaggernauth is not removable for having been convicted of an aggravated felony, the BIA should have addressed whether or not Jaggernauth's 1997 and 2001 grand theft convictions were crimes of moral turpitude that made her removable under 8 U.S.C. § 1227(a)(2)(A)(i).  Accordingly, the BIA's final order of removal is vacated insofar as it concludes that  Jaggernauth is removable under 8 U.S.C. § 1227(a)(2)(A)(iii). The case is remanded to the BIA to consider whether or not the IJ correctly determined that Jaggernauth was removable for having been convicted of two crimes of moral turpitude pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii).

**PETITION GRANTED.**