[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 9, 2010
JOHN LEY
CLERK

No. 09-15039
Non-Argument Calendar
_____

Agency No. A089-623-707

HECTOR DARIO PALAEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 9, 2010)

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Petitioner Hector Dario Palaez, through counsel, seeks review of the Board

of Immigration Appeals' ("BIA") refusal to reconsider the denial of his adjustment-of-status application.[1] He argues that the BIA erred by refusing to reconsider its denial of his adjustment-of-status application in the exercise of discretion, because the immigration judge ("IJ") denied relief on other grounds and Palaez did not receive a full hearing on the merits of his application. He also argues that the BIA abused its discretion by refusing to reconsider its alternative finding that he was ineligible to adjust his status under the Cuban Adjustment Act ("CAA"), Pub. L. No. 89-732, 80 Stat. 1161 (1966). We DENY his petition.

## I. BACKGROUND

Palaez, a native and citizen of Colombia, was admitted into the United States at Miami, Florida, in 1999, as a nonimmigrant visitor with authorization to remain in the United States until 21 October 1999. AR at 247. The Department of Homeland Security ("DHS") served him with a Notice to Appear ("NTA") in January 2008. Id. at 248. The NTA charged him with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as a nonimmigrant who remained in the United States for a time longer than permitted. Id. at 249.

Palaez appeared before an immigration judge ("IJ") with counsel, admitted the allegations in the NTA, and conceded that he was removable as charged. Id. at

---

[1]Though it appears that the correct spelling of the petitioner's surname is "Pelaez," we refer to him here as "Palaez," consistent with other court documents.

112-13. He indicated his intent to apply for adjustment of status under the CAA, Pub. L. No. 89-732, 80 Stat. 1161 (1966), based on the status of his current wife. Id. at 113-14. He submitted a copy of a Form I-485 application for adjustment of status. Id. at 209-12. He admitted on his application that he had a prior criminal conviction, but denied having been deported or removed. Id. at 211. He also denied seeking to procure an immigration benefit by fraud. Id.

The DHS submitted a number of documents to rebut Palaez's eligibility claim, including: (1) a state criminal case report, id. at 176-78; (2) a 2005 I-130 petition filed by Palaez's current wife, which represented that Palaez had never been in removal proceedings, id. at 179-80; (3) a copy of the Form I-485 that Palaez actually filed with immigration officials in 2006, which represented that he had no prior criminal convictions, id. at 182-85; (4) a 1994 deportation order against Palaez, in which the IJ noted that he failed to appear at a deportation hearing and found him removable as a nonimmigrant visitor who stayed in the United States for a time longer than permitted, id. at 186-88; (5) documents showing that Palaez filed a Form I-485 application for adjustment of status in 1991 and his former wife filed an I-130 petition, and that immigration officials denied the petition in 1993 based on a finding that the marriage was a sham or fraudulent marriage that could not convey immigration benefits, id. at 189-203; and (6) a 1985 order to show cause, reflecting that Palaez was an immigrant who remained

3

for longer than permitted, id. at 205-06.

Counsel for Palaez indicated that he failed to disclose the information reflected in the government's submission, including his use of two prior alien numbers and his having been under an order of removal. Id. at 137-38. As to criminal history, counsel represented that Palaez only told her that he was involved in a traffic accident while he had a suspended license but was not arrested, and that he never mentioned a worthless check conviction. Id. at 139-40. Counsel indicated that Palaez alternatively would seek voluntary departure. Id. at 141.

Palaez first came to the United States in 1983; he admitted that he overstayed his visa and was placed in removal proceedings, and that he left the country rather than appear at a removal hearing. Id. at 151-54. He returned to the United States with a student visa and married an American citizen who petitioned for him to become a permanent resident, though immigration officials found that this marriage was a sham. Id. at 154-55. He got a divorce and returned to Colombia and never attended a removal hearing about the matter. Id. at 154. Palaez reentered the United States a third time with a visa and he admitted that he never disclosed his immigration history on his visa applications. Id. at 156. While in the United States, Palaez pled guilty to driving under the influence in 1999 and was arrested for driving without a license in 2003. Id. at 149-151.

When confronted with the instant I-130 petition that did not disclose his

4

prior marriage, Palaez claimed that he did, in fact, disclose it. Id. at 157-58. He admitted that the Form I-130 also indicated that he was not involved in any prior removal proceedings, although he claimed he told an immigration officer that he did not remember if he ever was deported, and he admitted that he checked a box representing that he had no prior arrests. Id. at 158-62.

The IJ issued an oral decision finding that (1) Palaez was not eligible to seek adjustment of status under the CAA because his current wife adjusted her status under the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. 105-100, 8 U.S.C. § 1101 (1997), (2) he was ineligible for adjustment under NACARA because there was no visa number available to him, and (3) in any event, he was ineligible for any type of status adjustment under the INA because he previously entered into a fraudulent marriage. Id. at 103-04. The IJ did not deny Palaez's application for adjustment of status as a matter of discretion.

The IJ also denied Palaez's request for voluntary departure, finding that he did not demonstrate an ability to post the bond, and, as a matter of discretion, he did not deserve voluntary departure based on his evasive demeanor and lack of candor in describing his immigration history and criminal record. Id. at 104-08. Accordingly, the IJ ordered him removed to Colombia. Id. at 108-09.

Palaez, through substitute counsel, administratively appealed to the BIA, arguing that the IJ erred by finding that he was ineligible for adjustment under the

5

CAA. Id. at 95. He also argued that, because his current wife was a Cuban citizen and national admitted to the United States after January 1, 1959 and who had resided in the United States for more than one year, he was eligible for adjustment of status under the CAA even though she adjusted her status under NACARA. Id. at 63-66. Palaez did not challenge the IJ's other findings, including that he was ineligible for any status adjustment based on his prior fraudulent marriage, or the IJ's denial of voluntary departure as a matter of discretion. See id. at 61-67.

The BIA dismissed Palaez's appeal in July 2009, finding that Palaez was ineligible for relief under the CAA because his current wife adjusted her status under NACARA and not the CAA, and that he was ineligible for an adjustment of status under NACARA because he had engaged in marriage fraud and because there was no visa number available to him. Id. at 25-26. Alternatively, it denied adjustment of status as a matter of discretion, based on based on Palaez's criminal history and "flagrant disregard" of immigration laws. Id. at 26. The BIA also affirmed the IJ's discretionary denial of voluntary departure, noting that Palaez did not challenge this finding in his appeal. Id.

Palaez did not petition us for review of the BIA's July 2009 order of dismissal.[2] Instead, in August 2009, Palaez filed a motion for reconsideration with

---

[2]Accordingly, we lack jurisdiction to consider any arguments pertaining to the BIA's July 2009 denial of Palaez's application for an adjustment of status. See Jaggernauth v. U.S. Att'y Gen., 432 F.3d 1346, 1350-51 (11th Cir. 2005) (per curiam) (noting that the filing of a motion to

6

the BIA, arguing that it failed to address his arguments regarding his eligibility for adjustment under the CAA and that it improperly denied his application as a matter of discretion because the IJ did not reach that issue. Id. at 14-16.

The BIA denied Palaez's motion for reconsideration on 23 September 2009, rejecting his claim that he was eligible for adjustment of status under the CAA and reiterating its prior order. Id. at 6. It also rejected his challenge to its alternative denial of his application as a matter of discretion. Id.

Palaez filed a petition for review with us on 6 October 2009. On appeal, he argues that, because the IJ denied relief on other grounds and he did not receive a full hearing on the merits of his application, the BIA erred as a matter of law and may have violated his right to due process by refusing to reconsider his application in the exercise of discretion. He also argues that the BIA erred in refusing to reconsider its denial of his application for status adjustment under the CAA.

## II. DISCUSSION

We review the BIA's denial of a motion for reconsideration for abuse of discretion. Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006) (per curiam). We review constitutional challenges de novo. Id. We also review our subject matter jurisdiction de novo. Id.

An alien may file a motion to reconsider before the immigration officer or

reconsider does not affect the finality of the underlying order).

7

court or the BIA within 30 days of the entry of the removal order, for review of claimed errors in the law or facts. See 8 U.S.C. § 1229a(c)(6); 8 C.F.R. §§ 103.5(a)(3), 1003.2(b), and 1003.23(b)(2). "A motion to reconsider shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. 1003.2(b)(1).

The Immigration and Naturalization Act ("INA") allows the Attorney General, "in his discretion and under such regulations as he may prescribe," to adjust an alien's status to lawful permanent resident if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." INA § 245(a), 8 U.S.C. § 1255(a).

Though the INA "precludes appellate review of discretionary decisions [including the discretionary denial of an application for adjustment of status, it] does not preclude review of non-discretionary legal decisions that pertain to statutory eligibility for discretionary relief." Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2007) (per curiam) (citing INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B)). In addition, "we retain jurisdiction to review 'constitutional claims or questions of law raised upon a petition for review.'" Ferguson v. U.S. Att'y Gen., 563 F.3d 1254, 1259 (11th Cir. 2009) (quoting INA

8

§ 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D)), cert. denied, ___ U.S. ___, ___ S. Ct. ___, 2010 W.L. 757697 (Mar. 8, 2010) (No. 09-263).

"[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." Reno v. Flores, 507 U.S. 292, 306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). Accordingly, aliens must receive "notice and an opportunity to be heard in their removal proceedings." Fernandez-Bernal v. Att'y Gen. of the U.S., 257 F.3d 1304, 1310 n.8 (11th Cir. 2001). To prevail on a due process challenge, an alien must show substantial prejudice – that is, that the outcome would have differed "in the absence of the alleged procedural deficiencies." Patel v. U.S. Att'y Gen., 334 F.3d 1259, 1263 (11th Cir. 2003).

Palaez argues that the BIA erred by refusing to reconsider its denial of his adjustment-of-status application as a matter of discretion, because the IJ did not deny relief on this basis and because he was accordingly unable to argue the merits of his claim and to present "offsetting factors" during his hearing before the IJ. Appellant's Brief at 13-14. Even so, he admits that his statutory eligibility for a status adjustment was before the IJ and that proving his eligibility in this regard "necessarily would include [the exposition of] positive factors." Id. at 14. Palaez does not expressly mention "due process" in his issue statement, summary of argument, or substantive discussion of this claim. See id. at 1, 7-14.

Even assuming that Palaez implicitly raises a due process challenge by

9

contesting the BIA's ruling in light of alleged procedural deficiencies during his hearing before the IJ, this claim lacks merit. Cf. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2. (11th Cir. 2005) (per curiam). Palaez received "notice and an opportunity to be heard" on the merits of his adjustment of status application when he presented written evidence related to this issue and testified before the IJ in this regard at his removal hearing. See AR at 209-34, 144-62; Fernandez-Bernal, 257 F.3d at 1310 n.8. While Palaez argues that he would have presented additional evidence of "positive" and "offsetting" factors if he had realized that discretionary relief was a possibility, he has failed to demonstrate resulting prejudice because he has provided no details about the contents of such documents or testimony and no explanation of how this new evidence would have affected the outcome. See Patel, 334 F.3d at 1263. Thus, even though the IJ did not deny Palaez's application as a matter of discretion, the BIA's decision to do so did not violate his right to due process. Cf. 8 C.F.R. § 1003.1(d)(3)(ii) ("The Board may review questions of law, discretion, and judgment . . . in appeals from decisions of immigration judges de novo."). Accordingly, it did not abuse its discretion by denying reconsideration on this basis, and we deny Palaez's petition in this respect.

Palaez also argues that he was eligible for adjustment of status under the CAA despite his Cuban wife's adjustment under NACARA, and that the BIA erred by failing to address this claim when it denied his motion for reconsideration.

10

Appellant's Brief at 8-12.  Because Palaez failed to identify a valid legal or constitutional challenge to the BIA's refusal to reconsider its denial of his adjustment-of-status application as a matter of discretion, we need not consider his challenge to the BIA's refusal to reconsider its alternative finding.  See <u>Gonzalez-Oropeza</u>, 321 F.3d at 1332.

## III.  CONCLUSION

Palaez appeals the BIA's refusal to reconsider its denial of his application to adjust his status.  We hold that the BIA did not abuse its discretion in refusing to reconsider and that this denial did not deprive Palaez of due process.  Based on a review of the record and the parties' briefs, we deny Palaez's petition.

**PETITION DENIED.**