BYBEE, Circuit Judge,
dissenting:
Judge Frankel once wrote that “[a]s people, we know or powerfully suspect a good deal more than we are prepared as lawyers to admit.” Marvin E. Frankel, The Search for Truth: An Umpireal View, 123 U. Pa. L.Rev. 1031, 1039 (1975). This case demonstrates the principle perfectly. Everyone knows what Lance Corporal Aguilar-Turcios was looking at on his computer, but the lawyers — at least the majority — cannot bring themselves to admit it. Even when it is plain on the record before us.
The majority concludes that we cannot tell whether Aguilar-Turcios knowingly received or possessed visual depictions of a minor engaging in sexually explicit conduct, Maj. Op. at 1040, because:
• “[t]he act of accessing, visiting, or going to an Internet site is not the equivalent of possessing or receiving a visual depiction,” id. at 1040;
• “a pornographic Internet site ... does not necessarily contain any visual depictions,” id. at 1040;
• “Aguilar-Turcios’ Article 92 conviction do[es] not mention minors,” id.; and
• “Aguilar-Turcios’ guilty plea to the Article 134 charge of possessing images of minors involved in sexually explicit conduct” might be based on “an image of minors kissing,” id. at 1041.
This is fatuous. The idea that viewing pornography and ■ downloading pornographic images does not involve possessing or receiving a visual depiction, that a pornographic website does not contain visual depictions, that Aguilar-Turcios was not viewing child pornography, or that any sexually explicit conduct Aguilar-Turcios was viewing might just have involved minors kissing is contrary to all that we know.
We know — or, in Frankel’s words at least “powerfully suspect” — that the Marine Corps does not sentence its Marines to ten months of confinement, a pay-grade reduction, and a bad-conduct discharge for viewing pictures of minors kissing. But we need not speculate because, with military precision, the Special Court Martial laid out exactly what Aguilar-Turcios was doing. As Lance Corporal Aguilar-Turcios forthrightly admitted in his plea colloquy, he knew that the “individuals [were] engaged in sexually explicit conduct, that “they were minor children,” that it was his “purpose to download and view those photographs,” that he was “actually in possession of those images,” and that he “realize[d] it was wrong at the time [he] did it.” Lest there be any lingering doubt as to what Aguilar-Turcios was admitting to, the BIA’s administrative record has three of the pictures he downloaded and that were introduced at his court martial. They do not depict minors kissing.
This exercise is contrary to all reason. I respectfully, but emphatically, dissent.
I
Under 8 U.S.C. § 1227, an alien is removable for committing an “aggravated felony” after entry into the United States. See 8 U.S.C. § 1227(a)(2)(A)(iii). An “aggravated felony” includes, among other things, offenses described in 18 U.S.C. § 2252, see 8 U.S.C. § U01(a)(43)(I) (listing crimes relating to child pornography, *1043 including those described in 18 U.S.C. § 2252, as part of the definition of “aggravated felony”), two provisions of which are relevant here. First, it is an aggravated felony to “knowingly reeeive[ ] ... any visual depiction that has been ... transported in interstate or foreign commerce ... by any means including by computer ... if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct.” 18 U.S.C. § 2252(a)(2) (2003). Second, § 2252(a)(4), as it existed at the time of Aguilar-Turcios’ conviction, criminalized the “knowing[] possession of] 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction ..., if — (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct.” Id. § 2252(a)(4)(B). In my view, both of these provisions can form the basis for Aguilar-Turcios’ removal.
A
I agree with the majority that we cannot find that Aguilar-Turcios committed an aggravated felony as a categorical matter unless, after comparing the elements of the statute of conviction and the definition of the aggravated felony, we conclude that the entire range of conduct prohibited by the statute fits within the statutory definition of an aggravated felony. Taylor v. United States, 495 U.S. 575, 600-02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990).
There is no question that Aguilar-Turcios’ conviction would not constitute a removable offense under this inquiry. Aguilar-Turcios pled guilty to violations of two broad provisions of the UCMJ: one violation of Article 92 for violating a lawful general order, see 10 U.S.C. § 892, and one violation of Article 134 for conduct unbecoming a Marine, see 10 U.S.C. § 934.
Article 92 makes any member of the military who “violates or fails to obey any lawful general order or regulation” punishable by a court martial. 10 U.S.C. § 892(1). Aguilar-Turcios pled guilty to violating § 2-301(a)(2)(d) of Department of Defense Directive 5500.7-R, which prohibits “put[ting] federal government communications systems to uses that would reflect adversely on DoD or the DoD component (such as uses involving pornography; chain letters; unofficial advertising, ... and other uses that are incompatible with public service).”[1]
*1044 The broad language of § 2-301(a)(2)(d) clearly encompasses conduct unrelated to possession of child pornography as defined in 18 U.S.C. § 2252(a)(2) or 2252(a)(4); thus, a violation of § 2-301(a)(2)(d) is not categorically an aggravated felony.
B
The Taylor Court recognized that there would be situations where “the sentencing court [may look] beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [the generic crime].” Taylor, 495 U.S. at 602, 110 S.Ct. 2143. The Supreme Court has extended that approach to cases, such as this, where the alien has pled guilty to the predicate crime. See Shepard v. United States, 544 U.S. 13, 20, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). The substantial (and at times confusing) body of law that has developed to define this “narrow range of cases” where a court can look “beyond the mere fact of conviction” has come to be known as the modified categorical approach. Taylor, 495 U.S. at 602, 110 S.Ct. 2143; see United States v. Aguila-Montes de Oca, 655 F.3d 915 (9th Cir.2011) (en banc).
When the modified categorical analysis applies, we consult charging documents, signed plea agreements, jury instructions, guilty pleas, transcripts of plea proceedings, and judgment, and “comparable judicial record[s] of this information,” Shepard, 544 U.S. at 26, 125 S.Ct. 1254, to determine if the conduct for which the alien was actually convicted satisfies the definition of an aggravated felony. Aguila-Montes, 655 F.3d at 922; see also Shepard, 544 U.S. at 20-21, 125 S.Ct. 1254. Thus, in the present case I would examine these documents to determine “whether a plea of guilty to [the Article 92 conviction] necessarily admitted [the] elements of the [aggravated felony].” Shepard, 544 U.S. at 26, 125 S.Ct. 1254. In other words, we should ask the following question: “in the course of finding that the defendant violated the statute of conviction, was the fact-finder actually required to find the facts satisfying the elements of the generic offense?” Aguila-Montes, 655 F.3d at 936. “[I]n the plea context,” “the modified categorical approach asks what facts the conviction ‘necessarily rested’ on in light of the theory of the case....” Id. at 936-37.
The phrases “actually required” and “necessarily rested” may be subject to varying interpretations, but we have already elaborated on these concepts in our en banc decision in Aguila-Montes. In that decision, we said:
Aguila’s argument interprets the concepts of “actually required” and “necessarily rested” in Taylor and Shepard in a strictly elemental sense — that is, a prosecutor must be “actually required” to prove the generic elements in every case brought under the state statute so that a jury’s finding must have “necessarily rested” on that element in every trial brought under the provision.... As a consequence, according to Aguila ... the modified categorical approach can never demonstrate that the factfinder was “actually required,” as a formal matter, to find a non-element fact.... In other words, Aguila’s reading of “actually required” collapses the modified categorical approach into the categorical approach, because the only time that the factfinder in the state case is “actually required” to find a particular generic element in that way is when conviction under the state statute always satisfies the generic statutory definition regardless of the particular facts of the *1045 case.... Thus, in order to preserve any role for the modified categorical approach, “actually required” cannot mean “actually required by specific words in the statute of conviction.”
Id. at 936. Rejecting the “strictly elemental” interpretation of these phrases, we “acknowledge^] that ‘actually required’ means something like ‘actually required in light of the facts the defendant admitted ’ or ‘actually required in light of the facts referred to in jury instructions’----” Id. at 937 (emphasis added). This analysis should guide us here.
II
The majority agrees that the modified categorical approach is applicable, but concludes that under the modified categorical approach, “Aguilar-Turcios’ Article 92 conviction is not an aggravated felony because the facts on which his conviction ‘necessarily rested’ do not satisfy the elements of either 18 U.S.C. § 2252(a)(2) or (a)(4).” Maj. Op. at 1031. But because the Shepard documents — here, the Record of Trial by Special Court Martial, at which Aguilar-Turcios pled guilty to the charges— leave no doubt that Aguilar — Turcios’ conviction necessarily rested on his admission that he accessed child pornography within the meaning of 18 U.S.C. § 2252(a), I cannot agree.
A
We should have no difficulty finding that Aguilar-Turcios’ conviction for violating Article 92 necessarily shows that he committed the aggravated felony of knowing possession of child pornography. This is so for one unavoidable reason: The only pornography that Aguilar-Turcios admitted to accessing on his government computer during the plea colloquy was images of child pornography.
The charging document in this case leaves no room for doubt about what activities led to Aguilar-Turcios’ conviction for violating Article 92. The dates of the offenses and the serial number of the computer charged under Article 92 are identical to the dates and serial number charged under Article 134, which specifically and exclusively charges knowing possession of child pornography. These are violations of two military rules for the same core conduct. Aguilar-Turcios pled guilty to both charges contemporaneously in a single plea proceeding.
With regards to the violation of Article 92, the charging document alleged:
In that Lance Corporal Rigoberto Aguilarturcios, U.S. Marine Corps, on active duty, did, at or near Building 7134, Station Armory, Marine Tactical Air Command Squadron 38, Marine Air Control Group 38, 3d Marine Aircraft Wing, Marine Corps Air Station Miramar, San Diego, California, on divers occasions, from on or about 1 November 2001, to on or about 18 July 2002, violate a lawful general regulation, to wit: Department of Defense Directive 5500.7-R, Section 2-301 ..., by wrongfully using a government computer, Fujitsu MPB8032AT (HD), serial number 03065335 (3.2k gb), to obtain access to pornographic internet sites.
(emphasis added).
Similarly, the charge for the violation of Article 134 states:
In that Lance Corporal Rigoberto Aguilarturcios, U.S. Marine Corps, on active duty, did, at or near Building 7134, Station Armory, Marine Tactical Air Command Squadron 38, Marine Ah' Control Group 38, 3d Marine Aircraft Wing, Marine Corps Air Station Miramar, San Diego, California, on six (6) occasions, from on or about 1 November 2001, to on or about 18 July 2002, on a government computer hard drive, Fujitsu MPB3032AT (HD), serial number 03065835 (3.2k gb), wrongfully and knowingly possess visual depictions of *1046 minors engaging in sexually explicit conduct. ...
(emphasis added).
Aguilar-Turcios pled guilty as charged to both of these charges in the same plea proceeding, and, significantly, both charges give the same computer hard drive serial number and the same dates. It is true that the Article 92 charge only referred to “pornography,” but that is because the charge was failing to obey a lawful order, and the order was DoD Directive 5500.7-R, which prohibited inappropriate uses of government communications systems, including “uses involving pornography.”[2] For that reason I join the majority in concluding that his Article 92 conviction is not categorically an aggravated felony. The category of “pornography” is a divisible category, much as is the category of “weapons” we discussed at length in Aguila-Montes, 655 F.3d at 926-38. As a divisible category, it is appropriate for us to look at the Shepard documents to see if the pornography AguilarTurcios viewed included child pornography. Id. at 936-37 (even if the statute of conviction only required proof that the defendant used a “weapon,” “if the only weapon the defendant admitted to using was a gun, then we can be confident that the trier of fact was ‘required’ to find that the defendant used a gun”).
In this case, read as a whole, the charging document, the plea colloquy, and the exhibits admitted without objection leave no doubt that Aguilar-Turcios pled guilty to “wrongfully and knowingly possessing] visual depictions of minors engaging in sexually explicit conduct.” In connection with the Article 134 charge, he admitted to the charge that he “possessed six (6) visual depictions of minors engaging in sexually explicit conduct,” which he found at “pornographic internet sites.” During the plea colloquy, the military judge asked him whether he was viewing “individuals engaged in sexually explicit conduct,” whether “the people depicted in these photographs were minors,” and whether he was “actually in possession of those images.” During the sentencing portion of the hearing, Aguilar-Turcios’ own counsel confirmed with him that he had gone to “child porn sites” and that he knew it was wrong. The Stipulation of Fact, introduced as an exhibit and relied on by the court martial during the plea colloquy, provided further detail. Aguilar-Turcios admitted, in connection with the Article 92 violation, that he accessed “pornographic internet sites” on the computer in his workspace. In a signed, written statement, also admitted at his plea hearing, Aguilar-Turcios confessed that he was searching on his government computer using terms “like ‘preteen,’ ‘nude teens’ or ‘young nude’ or ‘Lolita’ ” from which he “would get a list of websites with teen or preteen girls.” Aguilar-Turcios’ admission to viewing “pornographic internet sites” on the same computer, on the same dates, undoubtedly refers to the child pornography.
Based on these documents, the military judge must have found Aguilar-Turcios guilty of an Article 92 violation based on his viewing of child pornography, as those images are the only ones specifically mentioned in the factual record presented during the plea colloquy and supported in the stipulations of fact and statements upon which the conviction relied.[3] As such, a *1047 finding that Aguilar-Turcios accessed child pornography — as opposed to just pornography — was “necessary” to Aguilar-Turcios’ conviction and he “could not have been convicted of the offense of conviction” without such a finding. Aguila-Montes, 655 F.3d at 937. A fact that is “necessary” to a conviction must be one that the defendant “has the incentive to contest ... even if that fact is not separately listed as a statutory element of the crime.” Id. at 938. Here, Aguilar-Turcios had the incentive to contest the accusation that he accessed child pornography because that charge had been levied against him in the Article 134 charge. Having elected to admit to the charge, he cannot now claim that consideration of that admission is unfair.
The majority nonetheless contends that the only “facts” on which Aguilar-Turcios’ conviction “necessarily rested” are (1) his use of a government computer, and (2) using the computer to access pornographic internet sites. Maj. Op. at 1039-40. Because Aguilar-Turcios’ admission to those facts “provided a sufficient factual basis” for his guilty plea, the majority reasons, any facts found beyond those necessary to satisfying those elements are superfluous and therefore beyond the bounds of the modified categorical analysis. Id. at 1036-37. But this is exactly the “strictly elemental” approach to interpreting “necessarily rested” and “actually required” that we rejected in Aguilar-Montes. The modified categorical approach should not be collapsed into the categorical approach in this manner. We must consider which facts Aguilar-Turcios’ conviction “necessarily rested” on “in light of the facts the defendant admitted,” without stripping down the admitted facts to only their components that align with the elements of the crime of conviction. Aguila-Montes, 655 F.3d at 937 (emphasis added).
The majority has undermined AguilarMontes. Aguila-Montes explicitly overruled the “missing element” rule set forth in Navarro-Lopez v. Gonzales, 503 F.3d *1048 1063, 1073 (9th Cir.2007), which precluded the use of the modified categorical approach in situations where the crime of conviction is missing an element of the generic crime. 655 F.3d at 940. Under the majority’s approach, in a missing element case, we will never find the factual basis for the missing element because the only facts on which the conviction will be deemed to have “necessarily rested” are the facts that mirror the exact elements of the generic crime. Further, as we said in Aguilar-Montes, “[t]he problem with [the ‘strictly elemental’ version of the modified categorical approach] is that if we follow its logic, the modified categorical approach should not apply to divisible statutes, leaving no room for a modified approach at all. Even in a divisible statute situation, the factfinder is never ‘actually required’ by statute alone to find the precise elements of the generic crime.” Id. at 935. Before Aguilar-Montes, we were in agreement that at least divisible statutes were subject to an effective version of the modified categorical approach. After Aguilar-Montes, we were in agreement that even so-called “missing element” statutes were similarly covered. The majority’s approach, which is the same “strictly elemental” approach we rejected in Aguilar-Montes, not only renders our overruling of Navarro-Lopez in Aguilar-Montes ineffectual but also undermines the effectiveness of the modified categorical approach generally.[4]
The majority’s approach is the equivalent of willful blindness to the facts Aguilar-Turcios admitted. The “only theory the government put forward” revolved around his accessing child pornography on his government computer. Cf. Aguila-Montes, 655 F.3d at 938. The majority simply stops reading the plea colloquy at a point convenient to its theory.
The majority can point to nothing in the record where Aguilar-Turcios admitted to viewing anything except child pornography. And even if there were such evidence, it would be irrelevant. If AguilarTurcios admitted to viewing both adult pornography and child pornography, he has admitted to viewing child pornography, and he has committed an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii) for which he may be removed. Arguing that Aguilar-Turcios also might have been viewing adult pornography does not help his case.[5]
Because the charging document, the plea colloquy, and the Stipulation of Fact all demonstrate that the pornography Aguilar-Turcios admitted to possessing was child pornography, the BIA was well within its rights to conclude that his conviction “necessarily rested” not only on accessing pornography, but accessing child *1049 pornography. Aguilar-Montes, 655 F.3d at 940.
B
The majority takes issue with the idea that Aguilar-Tureios’ admission to possession of child pornography as it relates to the Article 134 charge would somehow col- or his admission to accessing pornographic websites as it relates to the Article 92 charge. Maj. Op. at 1036-40.[6] That Aguilar-Tureios explicitly admitted to viewing the child pornography in connection with the Article 134 charge, and not the Article 92 charge, gives me only brief pause. As the majority appears to concede, nothing in Taylor or Shepard limits our modified categorical review to that portion of the charging document or plea colloquy that pertains to the specific charge at issue.[7] Maj. Op. at 1037. Instead, we are permitted to consult these documents to determine if the alien was convicted of a removable crime. The only factual basis on which the military judge could have found Aguilar-Tureios guilty of an Article 92 violation was his viewing of the six child pornography images admitted to in the plea colloquy, as those images are the only ones mentioned in the record at the time the military judge accepted the plea.
The majority, however, contends that “there is no legal precedent that allows a court ... to look beyond the record of conviction of the particular offense that the government alleges is an aggravated felony.” Maj. Op. at 1037. For support, the majority relies on Jaggernauth v. U.S. Attorney General, 432 F.3d 1346, 1355 (11th Cir.2005), which suggests (but by no means holds) that “ ‘no authority ... permits the combining of two offenses to determine whether one or the other is an aggravated felony.’” Maj. Op. at 1037 (quoting Jaggernauth, 432 F.3d at 1355). But looking to the Article 134 charge in connection with the Article 92 offense is not “combining” the two offenses to create an aggravated felony where one may not have existed. Instead, doing so merely informs the factual circumstances giving rise to the Article 92 charge. Jaggernauth has no bearing on this case.[8]
*1050 C
The remainder of the majority’s contentions are also unpersuasive. First, the majority contends that Aguilar-Turcios did not admit to possessing or receiving pornography in connection with the Article 92 charge; he only admitted to accessing pornography.[9] Maj. Op. at 1040-41. This is important, the majority reasons, because “the act of accessing ... an Internet site is not the equivalent of possessing or receiving” child pornography, and Aguilar-Turcios only admitted to accessing pornographic websites in connection with his Article 92 conviction. Maj. Op. at 1040-41.
The majority might have a valid point here if Aguilar-Turcios had only admitted to visiting pornographic websites. While we held in United States v. Romm, 455 F.3d 990 (9th Cir.2006), that “[i]n the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it,” id. at 998; accord United States v. Tucker, 305 F.3d 1193, 1204 (10th Cir.2002), we limited the scope of Romm in United States v. Kuchinski, 469 F.3d 853 (9th Cir.2006), holding that “[wjhere a defendant lacks knowledge about the cache files [where images are automatically saved when pornographic websites are visited], and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images,” id. at 863. It is true that “[n]othing in the Shepard documents in this case establishes that Aguilar-Turcios had knowledge of and access to whatever images were saved in the cache file on the computer that he used.” Maj. Op. at 1040 n. 23. But Aguilar-Turcios also admitted, albeit in the Article 134 context, to downloading child pornography images and stipulated that he viewed and “possessed six (6) visual depictions of minors engaging in sexually explicit conduct.” (Emphasis added.). Even if accessing pornographic websites does not constitute possessing or receiving pornography, there can be no question that Aguilar-Turcios possessed and received child pornography when he downloaded child pornography images.
I am equally unpersuaded by the majority’s discussion of the sexual content Aguilar-Turcios admitted to possessing. First, the majority contends that the military judge defined pornography to not only encompass visual depictions, but also “writings ... intended primarily to arouse sexual desire.” Maj. Op. at 1040. The majority reasons that the military judge’s “definition of pornography” does not “limit Aguilar-Turcios’ admission to the accessing of images or pictures only” and suggests that it may also include pornographic writings. Maj. Op. at 1040-41. This is, of course, flatly incompatible with Aguilar-Turcios’ admissions. There is no room for dispute about what AguilarTurcios was viewing.
Second, the majority reasons that because the military judge defined “sexually explicit conduct” in a manner different *1051 from the definition in 18 U.S.C. § 2256(2)(A), Aguilar-Turcios’ guilty plea to possessing images of minors involved in sexually explicit conduct might have involved conduct not embraced by the federal definition. Maj. Op. at 1040-41. Here, the military judge defined “sexually explicit conduct” as “conduct that is plainly or clearly involving sexually [sic] activity; the organs of sex; or the instincts, drives, or behavior associated with sexual activity.”[10] The federal statute, however, defines “sexually explicit conduct” as “actual or simulated — (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.” 18 U.S.C. § 2256(2)(A). The majority reasons, therefore, that Aguilar-Turcios could have admitted to possessing images of minors involved in conduct involving the instincts or drives of sex without depicting actual sexual intercourse, such as “an image of minors kissing.” Maj. Op. at 1041-42. Such conduct, the majority argues, is not encompassed in the federal definition.
This reasoning strains credulity. Aguilar-Turcios was not court-martialed, charged and convicted, dishonorably discharged, and placed in removal proceedings for reading romance novels or watching Shirley Temple movies on his government computer. We know that he admitted to using his government computer to access pornographic internet websites and he admitted to using that same computer to download pornographic images of children during the same time period. There is no need to speculate as the majority does about what these pictures depicted; even counsel at oral argument conceded that the pictures accessed by Aguilar-Turcios were not pictures of children kissing. Copies of the pictures are part of the administrative record and they leave no doubt that Aguilar-Turcios pled guilty to possessing images of minors involved in sexually explicit conduct under both the federal definition and the one given by the military judge. I cannot join the majority’s contrary conclusion.
Ill
The majority’s insistence on rigid formalism when it is not required is perplexing. A more flexible application of the modified categorical approach is not only consistent with our en banc decision in Aguila-Montes, but warranted here because the reasons for adopting a rigid reading of the Taylor categorical and modified categorical analysis in the criminal context are not implicated in civil removal proceedings. See Nijhawan v. Holder, 557 U.S. 29, 42, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009) (“[A] deportation proceeding is a civil proceeding in which the Government does not have to prove its claims ‘beyond a reasonable doubt.’”); accord Kawashima v. Holder, 615 F.3d 1043, 1056 (9th Cir. 2010) (holding that unlike in criminal proceedings, “the BIA is not limited to only those documents which a court applying the modified categorical approach may review”); but see Maj. Op. at 1034.
The categorical/modified categorical analysis developed in criminal cases, where concerns raised in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), are front and center. See, e.g., Shepard, 544 U.S. at 24-26, 125 S.Ct. 1254 (discussing potential Apprendi *1052 problems if a sentencing court were to consider non-jury found facts in connection with a sentencing enhancement under the Armed Career Criminal Act); id. at 26-28, 125 S.Ct. 1254 (Thomas, J., concurring in part and concurring in the judgment) (arguing that the Taylor categorical approach violates the Sixth Amendment); Taylor, 495 U.S. at 601, 110 S.Ct. 2143 (“If the sentencing court were to conclude, from its own review of the record, that the defendant actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury trial?”). But this is not a criminal case in which Aguilar-Turcios might be subject to increased criminal penalties on the basis of judge-found facts, because an alien facing removal is not entitled to a jury trial to determine whether he is removable. See Turner v. Williams, 194 U.S. 279, 290, 24 S.Ct. 719, 48 L.Ed. 979 (1904) (“[T]he deportation of an alien who is found to be here in violation of law is not a deprivation of liberty without due process of law, and ... the provisions of the Constitution securing the right of trial by jury have no application.”). Furthermore, the standard of proof for establishing that an alien is removable is lower than the standard of proof required for a criminal conviction. See 8 U.S.C. § 1229a(c)(3)(A) (establishing that the government has the burden to prove an alien is removable by “clear and convincing evidence”).[11]
A statutory concern may arise if the modified categorical approach is applied more flexibly in the immigration context because Congress has only made aliens removable for actual convictions of certain crimes, not for having engaged in certain elements. See, e.g., 8 U.S.C. § 1227(a) (2) (A) (iii) (“Any alien who is convicted of an aggravated felony at any time after admission is deportable.” (emphasis added)); see also Taylor, 495 U.S. at 600, 110 S.Ct. 2143 (“[T]he language of [18 U.S.C.] § 924(e) generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions.”). This method of interpreting the statutory language is motivated by a concern for “the practical difficulties and potential unfairness” of inquiring into the facts of each individual conviction, Taylor, 495 U.S. at 601, 110 S.Ct. 2143, and the desire to avoid what would basically be a retrial of the conviction, see id. at 601-02, 110 S.Ct. 2143. But that concern is not present in this ease. There is no need to retry the facts of the conviction here because the plea colloquy, charging document, and stipulations of fact are undisputed in the record before us.
This case illustrates precisely why a more flexible approach to the modified categorical analysis should be embraced when analyzing civil removal proceedings. There is no doubt that Aguilar-Turcios is an alien, that he knowingly possessed images depicting a minor engaging in sexually explicit conduct, that those images required a minor actually to engage in sexually explicit conduct, that he was convicted under the UCMJ for that crime, and that aliens convicted of knowing pos *1053 session of child pornography are removable. Finding otherwise requires a significant indulgence of the “legal imagination.” See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007); cf. James v. United States, 550 U.S. 192, 207-08, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (“One could, of course, imagine a situation in which attempted burglary might not pose a realistic risk of confrontation or injury to anyone.... But ACCA does not require metaphysical certainty.”). The conduct in question was presented to Aguilar-Turcios and he had every incentive to dispute it. If the concern motivating the entire categorical/modified categorical exercise in the immigration context is that courts must be certain of the conduct that an alien committed before the alien is removed and be certain that the alien had the opportunity and incentive to contest the relevant facts related to that conduct, then we need not be worried here that we are paying improper attention to that motivating concern.[12]
*1054 IV
The record presented to the BIA and the Immigration Judge leaves no room for doubt about the conduct to which AguilarTurcios pled guilty. Had he not been in the military at the time of his offense, or had his conduct occurred off-base, he could have been prosecuted under either California Penal Code § 311.11, which tracks precisely the elements of 18 U.S.C. § 2252, or under § 2252 itself, which is statutorily defined as an aggravated felony, see 8 U.S.C. § 1101(a)(43)(I), and his Article 92 conviction “necessarily” rested on all of the elements of a § 2252 violation.
This is not a close case. Aguilar-Turcios was convicted of a removable offense, as the BIA properly concluded. I would deny the petition.
I respectfully dissent.

. The majority “assume[s] without deciding that ... the elements of a lawful general order like that at issue in this case" may be considered in determining whether AguilarTurcios' Article 92 conviction is a categorical aggravated felony. Maj. Op. at 1031 n. 9. I have no hesitation concluding that we may look to the elements of the lawful general order when applying the categorical and modified categorical analysis. The purpose of the UCMJ is to reconcile the need for a command structure in the military with the need for criminal law safeguards in administering military justice. See John S. Cooke, Introduction: Fiftieth Anniversary of the Uniform Code of Military Justice Symposium Edition, 165 Mil. L.Rev. 1, 7-10 (2000). For that reason, the UCMJ shares many characteristics of the civilian criminal law system, and provides important procedural rights such as the right against self-incrimination and the right to assistance of counsel. Id. at 9-10. The UCMJ is thus properly viewed as a parallel system of law enforcement, akin to a state criminal system.
The categorical and modified categorical analysis was designed to calibrate the disparate criminal laws in our federal system to the national criminal and immigration laws. Had Aguilar-Turcios pled guilty to a violation of California's child pornography statute, Cal.Penal Code § 311.11, the panel would have no reservations applying the categorical and modified categorical analysis to determine if § 311.11 was an aggravated felony. I see no principled difference between looking at the elements of the lawful general order underlying Aguilar-Turcios' convictions and looking at the elements of a state criminal *1044 statute. To conclude otherwise would be to render the immigration removal laws inapplicable to any alien subject to the UCMJ who is prosecuted for violating an order that would have been prosecuted as a removable crime had it occurred off the military base.

. Aguilar-Turcios’ plea colloquy confirms that the focus was whether he had "any permission or authority to go to these sites.”

. The majority claims that we cannot consider certain admissions made by Aguilar-Turcios because they are contained in a sworn statement that was admitted "only at the sentencing phase of his court-martial” rather than, I assume, during the plea phase. Maj. Op. at 1038 n. 20. But the plea and sentencing occurred on the same day before the same military judge and are contained in the same *1047 transcript. Nothing the Supreme Court has said and nothing we have said in other cases instructs us to stop reading the transcript of the judicial body accepting the plea when we believe that the defendant has finished confirming the facts upon which his plea is based, even if additional stipulated facts are contained elsewhere in the same transcript. Quite the opposite, Shepard specifically identifies “the defendant’s own admissions or accepted findings of fact confirming the factual basis for a valid plea” as reliable bases for determining the facts upon which the conviction necessarily rested. Shepard, 544 U.S. at 25, 125 S.Ct. 1254.
Our own case law post-Shepard confirms that stipulations of fact forming the basis of a defendant’s plea may be considered under the modified categorical approach. For example, in Parrilla v. Gonzales, 414 F.3d 1038 (9th Cir.2005), the petitioner agreed that a Certification for Determination of Probable Cause (“CDPC”), which described the factual basis for his criminal prosecution, could be referenced to "determin[e] if there is a factual basis for [his] plea and for sentencing.” Id. at 1044. We concluded that because the petitioner “explicitly incorporated] the CDPC into his guilty plea” by stating that he understood that the court would review the Certification in determining whether there was a factual basis for his plea, we could consider it as part of the modified categorical analysis.
Id. Our situation is no different. Here, prior to sentencing, Aguilar-Turcios entered into a Stipulation of Fact that describes the factual basis for his plea. The Stipulation makes clear that it can be used for, among other things, "determining] whether the accused is guilty of the charged offenses" and "reviewing the case for factual sufficiency.” Just as in Parrilla, Aguilar-Turcios’s Stipulation of Fact is "an explicit statement 'in which the factual basis for the plea was confirmed by the defendant,' ” and therefore a cognizable Shepard document. 414 F.3d at 1044 (quoting Shepard, 544 U.S. at 26, 125 S.Ct. 1254).

. According to the majority, "[tjhe dissent argues that by failing to consider AguilarTurcios’ factual admissions in connection with his plea of guilty to the Article 134 charge, we have effectively resurrected the 'missing element rule’ from Navarro-Lopez and undermined the holding in Aguila-Montes and the modified categorical approach in general.” Maj. Op. at 1034-35 n. 14. But my argument here relates to the majority’s approach, not specifically to its failure to consider the factual admissions made in connection with the Article 134 charge, and the majority’s approach would be problematic even in a case with no second charge involved. The modified categorical approach cannot limit the facts to be considered to merely the components of the admitted facts that align with the elements of the crime of conviction if it is to serve any purpose, yet that is exactly how the majority construes the modified categorical approach in its opinion.

. In fact, in one of his written statements introduced at his plea hearing, Aguilar-Turcios discusses accessing adult porn sites. That fact was minimized as the military judge, the prosecutor, and defense counsel all focused on his viewing of child pornography.

. The majority reasons that because AguilarTureios admitted to only six instances of downloading child pornography, and also to accessing pornographic websites on "divers” occasions, it is "unlikely" that the separate charges address the same conduct. Maj. Op. at 1038-40. This is a curious conclusion. The military judge informed Aguilar-Tureios that "divers” means "on multiple occasions or more than one occasion.” Six occasions would easily fall within that definition.

. The crux of the majority’s reasoning is that because the Article 92 and Article 134 charges do not "overlap” in either the Stipulation of Fact, Maj. Op. at 1035-36, or the plea colloquy, id. at 1035-36, we too must treat them as separate. To the extent that the majority means that the Stipulation and the military judge addressed the Article 92 charge first and the Article 134 charge second, I do not disagree. But to say that the charges do not overlap or that ”[t]his is not a case where multiple convictions rested on the same set of facts,” id. at 1038, is preposterous. The Article 92 and 134 charges do overlap in that they identify the same computer hard drive serial number and the same dates in the same charging document.

.The majority actually adopts a rule different from, and much broader than, that suggested in Jaggemauth. Exercising what it calls "caution,” the majority ”decline[s] to create ... authority” permitting courts to consider admitted facts contained elsewhere in the record other than that portion of the charging document or plea colloquy that pertains to the specific charge at issue. Maj. Op. at 1037. Despite this “caution,” the majority has no qualms with precluding any court from ever doing so where facts are contained in sections of Shepard documents not "at issue on appeal,” no matter how relevant, or reliable, those facts may be. Maj. Op. at 1037-38.

. The relevant statutes in this case require the defendant to either "knowingly receive[ ] ... any visual depiction that has been ... transported in interstate or foreign commerce ... by any means including by computer ... if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct,” 18 U.S.C. § 2252(a)(2) (2003), or "knowingly possess[ ] 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction ..., if — (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct,” id. § 2252(a)(4)(B).

. In his signed statements, admitted into evidence at his court martial, Aguilar-Turcios stated that he understood "child pornography” to mean "sexual pictures or nude pictures of teens or preteens or pictures of teens or preteens having sex.”

. In fact, the First Circuit has criticized us for applying our “modified categorical approach” too strictly in the immigration context. See Conteh v. Gonzales, 461 F.3d 45, 54-55 (1st Cir.2006) (noting that the constitutional concerns motivating the categorical analysis in Shepard and Taylor are not present in civil immigration proceedings, that the BIA "favor[s] a less restrictive form of the categorical approach in cases other than those controlled by Ninth Circuit precedent,” and that the Ninth Circuit's form of the modified categorical analysis "impermissibly elevates the government's burden in civil removal proceedings” to “proof beyond a reasonable doubt.”).

. The majority rejects the proposition that we treat criminal and civil removal proceedings differently because "the Supreme Court has repeatedly applied the categorical and modified categorical approaches in immigration cases” in recent years, Maj. Op. at 1033 (citing Kawashima v. Holder, - U.S. -, 132 S.Ct. 1166, 1172, 182 L.Ed.2d 1 (2012); Carachuri-Rosendo, 130 S.Ct. 2577, 2586-87 (2010); Gonzales v. Duenas-Alvarez, 549 U.S. 183, 185-87, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)), and because other circuits have recognized that these approaches apply in the immigration context, Maj. Op. at 1033-34. I do not disagree with these unremarkable observations, but the question here is not whether the categorical (or modified categorical) test should be applied in immigration proceedings, but how it should be applied. Although, we recently confirmed in Aguila-Montes that the categorical and modified categorical approaches "establish the rules by which the government may use prior state convictions ... to remove certain aliens,” 655 F.3d at 917, nothing we said in Aguila-Montes (or that the Supreme Court has said in its categorical/modified categorical jurisprudence) precludes us from considering whether our application of the test in the immigration context need be as rigid as it is in criminal proceedings, where constitutional protections are at their highest. See Magallanes-Damian v. INS, 783 F.2d 931, 933 (9th Cir.1986) ("Deportation hearings are deemed to be civil, not criminal, proceedings and thus not subject to the full panoply of procedural safeguards accompanying criminal trials.”). Those cases certainly do not mandate what the majority holds: that "the categorical and modified categorical approaches apply ... in the same manner” in both immigration and criminal proceedings. Maj. Op. at 1033-34.
To be clear, I am not proposing that we do away with the categorical/modified categorical approach in the context of immigration proceedings. Nor am I suggesting that the modified categorical approach in immigration proceedings permits us to look to documents outside the realm of Shepard, as the majority incorrectly seems to suggest. See Maj. Op. at 1032-33. I agree that we may not look beyond the Shepard documents when conducting our analysis but I emphatically disagree with the majority that we may not conduct "a more expansive review of the Shepard documents.” Id. at 1038. As I read it, Shepard defines the "documents a court may consider under the modified categorical approach in order to determine whether a guilty plea to an offense defined by a nongeneric statute 'necessarily admitted elements of the generic offense.’ ” Aguila-Montes, 655 F.3d at 921 (emphasis added) (quoting Shepard, 544 U.S. at 26, 125 S.Ct. 1254). If a document is a Shepard document, meaning that it may reliably be consulted as the factual basis for a defendant’s plea, why must we self-redact the parts we deem unnecessary and forgo an "expansive reading,” if that expansive reading involves nothing more than considering the document in its entirety?
My point is that our jurisprudence is flexible enough to acknowledge a distinction between the criminal and civil context, and that we should apply the modified categorical approach accordingly, especially where, as here, the considerations suggesting a cautious approach are not present and where the Shepard documents leave no doubt as to what occurred.